FILED
2016 Mar-24  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SAMANTHA MALONE,** | ) | |
| **HOLLY KIMMONS,** | ) | |
| **MARK BLEDSOE** | ) | |
| **And ANDY FENNELL on behalf of** | ) | |
| **themselves and those similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **JURY TRIAL** |
| | ) | **DEMAND** |
| **Vs.** | ) | |
| | ) | |
| **CITY OF DECATUR, ALABAMA** | ) | |
| **A Municipality** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **EMILY BAGGETT City of Decatur Prosecutor** | ) | |
| **In her Individual and Official capacity** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **CHRISTY MILLER, City of Decatur Appointed** | ) | |
| **Defense Counsel** | ) | |
| **In her Individual and Official capacity** | ) | |
| | ) | |
| **PROFESSIONAL PROBATION SERVICES** | ) | |
| **A Business Entity** | ) | |
| | ) | |
| **Defendants.** | ) | |

1

# I.   **PRELIMINARY STATEMENT**

1.   Defendant City of Decatur ("Decatur") has maintained a modern-day debtors' prison through its unconstitutional policy, practice, or custom of using its police department to arrest and detain poor defendants who cannot pay fines and costs owed to the Municipal Court. Defendant, Decatur, through its contract with Defendant Professional Probation Services, required these individuals to remain in the city jail until someone comes to pay on their behalf or "sit out" their time.

2.   Defendant Emily Baggett ("Baggett") acting under color of law in her individual and official capacity has prosecuted individuals in the city of Decatur for being unable to pay fines and fees on municipal violations using a policy, practice or custom in violation of  said individuals' constitutional rights.

3.   Defendant Christy Miller ("Miller") acting under color of law in her individual and official capacity was appointed to defend individuals in the City of Decatur Municipal Court and failed to provide any defense to individuals but rather told individuals they had to sign up for probation with Professional Probation Services.

4.   Defendant Professional Probation Services ("PPS") is a business entity that contracted with the City of Decatur to provide "probation services" to the Municipal Court and used a system of harassment and intimidation for profit.

5.   Plaintiffs were arrested and jailed under these polices, practices or customs

simply because they did not have the money to pay fees to PPS, which many times
exceeded the actual fines, and fines to the City of Decatur. In taking away their
liberty for days, weeks or months, Defendants further destabilized Plaintiffs lives
by removing them from their jobs, their children, families and their homes.

6.  The actions of Defendants violate the Fourth, Sixth and Fourteenth
Amendments to the U.S. Constitution. They further constitute false imprisonment
under Alabama law.

7.  This practice by the City of Decatur through its contractual agreement with
PPS and the City of Decatur has affected hundreds of low income people who were
issued traffic tickets and/or arrested for misdemeanors. Plaintiffs bring these claims
on their own behalf and on behalf of all others similarly situated who suffered
under these policies or will continue to suffer if these practices are not enjoined.

8.  Plaintiffs seek damages for the harms that these policies and practices
have caused as well as an Order enjoining the defendants from continued
unconstitutional conduct.

## JURISDICTION AND VENUE

9.  Plaintiffs bring claims arising under 42 U.S.C. §1983, 18 U.S.C. § 1964(c)
(RICO) and the U.S. Constitution, which this Court has jurisdiction over pursuant
to 28 U.S.C. § § 1331 and 1343(a)(3). This Court has supplemental jurisdiction

over the state law causes of action asserted in this Complaint pursuant to 28 U.S.C.

§1367. This action is being filed pursuant to FRCP 23(a), FRCP 23(b), and 23(c).

10. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part

of the events giving rise to Plaintiffs claims occurred in this District.

## II.    PARTIES

### A. Plaintiffs

11. Plaintiff Samantha Malone is a resident of the City of Decatur, Alabama.

12. Plaintiff Holly Kimmons is a resident of the City of Decatur, Alabama.

13. Plaintiff Mark Bledsoe is a resident of the City of Decatur, Alabama.

14. Plaintiff Andy Fennell is a resident of the City of Decatur, Alabama.

### B. Defendants

15. Defendant City of Decatur ("Decatur") is a municipal corporation located

within Morgan County, Alabama.

16. Defendant Emily Baggett ("Baggett") is the Prosecutor for the City of

Decatur, Alabama. The Prosecutor position for the City of Decatur is a full time

job.

17. Defendant Christy Miller ("Miller") is one of several attorneys appointed to

defendants in the City of Decatur Municipal Court with a large percentage of the

appointments in the Municipal Court for the City of Decatur.

18. Defendant Professional Probation Services ("PPS") is a foreign corporation

4

with its principal place of business located in the State of Georgia registered with the Alabama Secretary of State and was actively engaging in business in the State of Alabama, County of Morgan, City of Decatur at all times referenced in this complaint.

### III.   STATEMENT OF FACTS

19. Decatur is located in Morgan County, Alabama. It has a population of approximately 55,000 people and almost 20% of those residing in Decatur live below the poverty level.

20. Decatur operates a municipal court and municipal jail.

21. The municipal court operates a court docket Monday through Friday with a full time Judge and full time Prosecutor.

22. The full time Judge is Billy E. Cook.

23. The full time Prosecutor is Attorney Emily Baggett.

24. The municipal court appoints lawyers to defend individuals who cannot afford to hire his or her own defense counsel.

25. Attorney Christy Miller receives a large percentage of the defense appointments in the Decatur Municipal Court.

26. The Decatur municipal court has jurisdiction over misdemeanors, traffic offenses, city code violations and parking tickets occurring within the city limits or the police jurisdiction of the City of Decatur.

27. Defense Counsel is not appointed in every case and the City's full time prosecutor Emily Baggett informs the Defendants that they are going to be placed on probation.

28. In most cases, when defense counsel is appointed it is Attorney Christy Miller and Miller simply directs the defendants to plead guilty and they will be placed on probation with Professional Probation Services.

29. If an individual has more than one charge and states he or she desires to plead to some but not all of the charges, the individual is told they must plead guilty to all the charges and be placed on probation.

30. If a person is assessed fines or costs in court and cannot pay them in full they are given a suspended sentence and placed on probation with PPS.

31. During the court proceedings, the Municipal Court Judge does not assess a person's ability to pay.

32. The defendants are given a "sentence of probation" which tells them the amount of his or her fine and orders them to serve a specified number of months on probation.

33. The "sentence of probation" orders the individuals to pay a monthly probation service fee of $35.00 to PPS and sets forth an additional monthly payment toward the fines, including surcharges, all to be paid within a specified time frame.

34. PPS then provides the defendants with a paper on PPS letterhead which States "your payment is due upon first appointment. Your payments must be in cash (exact change) or a money order. You must report to your probation officer as directed. **Missed appointments can and will result in an issuance of a warrant for your arrest.** You will be scheduled to report at least once a month. **If your minimum payment is not met on that appointment day, you may be required to report on a weekly basis. The conditions of your sentence are NON-NEGOTIABLE and will be strictly enforced."**

35. PPS consistently and unlawfully without court supervision extended the time defendants are ordered to serve on probation to improperly extend the fee collection period and thereby increase their profits.

36. The City of Decatur provided and implemented a policy, custom and practice for Decatur City Police Officers to be present and accessible at the PPS office.

37. The officers were used to threaten and intimidate individuals in that if they did not pay their fines they would be arrested and immediately taken to jail.

38. Many times, indigent defendants who could not pay were arrested and taken to jail directly from the PPS office.

39. If an individual could not pay, PPS would provide information to the

Decatur Municipal Court for a warrant to issue or for his or her probation to be revoked and the defendant placed in jail.

40.If a defendant was jailed, he or she did not receive credit against the fees or fines for any of the days they were jailed.

41. Individuals who were jailed for being unable to pay received an additional charge for violation of their probation order and sentenced to additional time on probation, fees and fines all due to their inability to pay. In essence creating an unlawful debtors prison.

42. PPS and the Decatur Municipal Court worked together to ensure the citizens of Decatur knew **" you pay or go to jail".**

43.For over a decade, Decatur has worked with PPS implementing  policies, practices and customs of arresting individuals who could not pay their fees and fines in full and jailing them until monies are paid.

44.Over the time period relevant to this Complaint, the City of Decatur , its agents the Municipal Judge, the City Prosecutor , appointed counsel Christy Miller the Decatur City Police and PPS were fully aware of the customs and practices alleged and all acquiesced to these practices and customs.

A. <u>**Factual Allegations Regarding the Plaintiffs who were Jailed**</u>

    i.    <u>Samantha Malone</u>

45. Samantha Malone, ("Malone") was charged with driving on suspended

license and given a no child restraint ticket.

46. Malone was placed on Probation with PPS and required to pay fifty dollars ($50) a month toward her fine and thirty five ($35) a month for the fee to PPS for a total of eighty five ($85.00) per month.

47. PPS told Malone if she did not come in to make her payment she would be arrested for non-payment.

48. Malone tried to explain to her "probation officer" she was not working and on a fixed income and PPS told her **"either you pay or go to jail."**

49. Malone was pregnant during her time on probation with PPS.

50. While pregnant and during one of her monthly meetings, the PPS "probation officer" told Malone if she did not pay her fine off by the end of the month she would be jailed.

51. When Malone was close to paying off her fine, the PPS "probation officer" told Malone **"you need to pay this off by the end of the month or a warrant will be issued for your arrest."**

52. Malone did not have the money to pay the fine off in full and according to her probation order, Malone had two (2) more months to make the full payment.

53. PPS intentionally changed the terms of her probation order and threatened her with jail knowing she was pregnant.

54. When Malone did not pay the fine off at month's end, PPS instructed the

Decatur City Municipal Court to issue a warrant for Malone's arrest.

55. Malone was eventually arrested on the warrant and spent one (1) month in jail. Due to her family/children situation she was "allowed" to do weekends.

56. Malone was forced to find refuge for her children while she was incarcerated.

57. Malone was not given credit against her fine for any of the time she was incarcerated for non-payment.

ii.    Plaintiff Mark Bledsoe

58. In January of 2014, Mark Bledsoe, "Bledsoe", was charged with Possession of Drug Paraphernalia.

59. When Bledsoe appeared in Decatur City Court to defend his charges the Prosecutor advised him to just say he was guilty and get on probation. However, Bledsoe was not fully advised of the consequences if he could not pay his fine.

60. Bledsoe was ordered to pay a fine in the amount of $250.00 plus court costs of $476.00 for a total of $726.00.

61. Bledsoe's sentence of probation ordered him to pay a monthly probation fee of $35.00 per month to PPS and his fine at the rate of $65.00 each month for twelve (12) months, bringing his total monthly obligation to $100 each month.

62. Bledsoe was instructed by PPS that he had to report every week to the PPS

office and he would be required to pay the $35.00 fee to PPS each time he reported regardless of whether he had monies to pay on his fine.

63. Because Bledsoe was instructed by PPS to report each week instead of monthly what would normally be a $35.00 monthly fee to PPS became $140.00 a month to PPS in addition to $65.00 a month toward the fine.

64. PPS told Bledsoe **"if you do not pay, your probation will start all over again, you will go to jail and still have to pay."**

65. When Bledsoe was unable to make the payments he told PPS that he had just been released from the hospital after having suffered a stroke and attempted to show his physician excuse.

66.PPS and the City of Decatur told Bledsoe they did **"not want that piece of paper doctor excuse and he would be locked up if he did not comply"**

67.PPS referred to the city jail as the **"Decatur City Inn"** and told Beldsoe, **"if you do not want to go to the Decatur City Inn, do what you are told."**

68.Bledsoe was jailed for two (2) weeks for failure to pay.

69.Bledsoe was not given credit against his fines and fees for the time he was incarcerated.  Upon his release his fines remained the same and his fees continued.

   iii.   <u>Holly Kimmons</u>

70. Holly Kimmons, ("Kimmons") was charged with Theft 3rd degree in 2014.

71. Kimmons was ordered to pay $85.00 per month.

72. Kimmons paid as much as she could each time she reported and despite her attempts to pay what she could, Kimmons received phone calls from PPS saying, **"you owe money to PPS and if you do not start paying <u>more</u> than what you are paying you will be arrested."**

73. Kimmons could not pay more than what she was paying and to keep from being arrested for non-payment, Kimmons got someone to give her some tools so that she could return them to the store for extra money. When Kimmons attempted to return the items she learned they were stolen and she was arrested.

74. Kimmons was so fearful of being arrested if she did not pay, she was forced to beg for money and ended up getting arrested trying to stay out of jail!

75. Kimmons has been on probation and paying PPS for over two (2) years.

76. Kimmons was jailed fifty-four (54) days for non-payment/violation in February of 2015.

77. Kimmons, who is on the medication Celexa, was unable to take her medication while jailed and she became ill while incarcerated.

78. Celexa withdrawal symptoms can begin within eight (8) hours of a missed and can last up to eight (8) weeks.

79. The jail refused to take her to a doctor for her medication because, according to the jail, her need for medication was not a life or death matter.

80. Kimmons became weak and suffered increased heart rate. Kimmons

suffered blackout periods where she saw stars while in the jail.

81. Kimmons was without her medication for over thirty days all because she was poor and could not afford to pay fees to PPS.

    iv.   <u>Andy Fennell</u>

82. Andy Fennell, ("Fennell") was charged with driving while revoked and speeding in 2014.

83. Fennell was told to pay $85.00 each month toward his fine and $35.00 a month to PPS for fees.

84. Fennell was placed on probation with PPS by City of Decatur and set an appointment to meet his PPS "probation officer".

85. At Fennell first appointment, the PPS "probation officer" requested he pay all the money in full. When Fennell told the PPS "probation officer" he did not have all the money he was told **"you have two (2) weeks to get me my money"**.

86. Fennell could not pay the full amount and he was incarcerated for thirty (30) days.

87. Fennell has made payments on his tickets for months and each time he makes a payment, the fine remained the same.

88. In August of 2015 Fennell's fee to PPS showed a balance of $420.00 with payment of $280.00.

89. This should have brought the fees to PPS down to $140.00.

90. However, in October of 2015, Fennell's receipt showed he still had a balance of $420 to PPS in fees.

91. When PPS told Fennell he only has two (2) weeks to pay they changed the terms of his probation sentence and with the assistance of the City of Decatur, Fennell was jailed for being too poor to pay.

## IV.   CLASS ALLEGATIONS

Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) related to claims One, Two, Three and Four for all individuals who were harassed, threatened, intimidated, arrested and jailed for their failure to pay fines and court costs.

**Rule 23(a)(1), Numerosity**: The precise size of the class is unknown by Plaintiffs but is or will in the future be in the hundreds. The class is comprised of low income individuals who were threatened with incarceration and those who were incarcerated because they could not afford to pay their fees and fines. The class is comprised of jailed and non-jailed individuals.

**Rule 23(a)(2), Commonality**: Plaintiffs raise claims based on questions of law and fact that are common to and typical of the putuative class members. The Representative Plaintiffs are all members of the class they seek to represent. That class consists of low income individuals who received tickets and or misdemeanors from the City of Decatur and who were placed on Probation with Professional

Probation Services. The Representative Plaintiffs were all ordered to pay fees to

Professional Probation Services over and above their fines. The Representative

Plaintiffs were all threatened with incarceration and/or incarcerated if they could

not pay both the fees to Professional Probation Services and the fines to the City of

Decatur.

**<u>Questions of fact common to the classes include</u>**:

The prosecution of the claims of the Representative Plaintiffs requires adjudication

of numerous questions of law and fact common to their individual claims and those

of the putative class they seek to represent. The common questions of law would

include, inter alia:

a. Whether the City of Decatur implemented and followed a policy, practice

or custom that used its police force to threaten, harass and intimidate individuals

on probation with PPS for payment of fees, fines and costs.

b. Whether the City of Decatur implemented and followed a policy, practice

or custom of arresting those who could not or cannot pay fines and costs, and after

jailing them for being unable to pay continued to force them to pay those fees and

fines in full.

c. Whether the City of Decatur implemented and followed a policy, practice

or custom of not informing individuals of their right to counsel, appointing counsel

on their behalf or obtaining a knowing, intelligent and voluntary waiver of counsel.

d.  Whether the City of Decatur implemented and followed a policy, practice or custom of arresting and incarcerating individuals without probable cause when those individuals could not or cannot pay the money owed to the Court and to PPS.

e.  Whether the City of Decatur implemented and followed a policy, practice or custom of arresting and incarcerating individuals who could not or cannot pay and then failed to give them monetary credit against the fees and fines for the days they were incarcerated.

f.  Whether the City of Decatur used its full time Prosecutor and Appointed Defense Counsel in furtherance of its policy, practice and custom of revoking, arresting and incarcerating low income individuals who could not afford to pay fees and fines.

g.  Whether PPS threatened, harassed and intimidated individuals who could not afford to pay the fines, fees and costs of their probation.

h.  Whether PPS engaged in acts of extorting money in violation of the RICO act from individuals by threatening, harassing and intimidating them.

i.  Whether PPS unilaterally and without justifaction altered the terms of individuals probation orders to improperly collect fees.

j.  Whether the City of Decatur's Prosecutor and the City of Decatur's court appointed defense attorneys engaged in conduct that violated the constitutional rights of defendants.

**Questions of law common to class include:**

a.   Whether individuals are entitled to a due process hearing regarding their ability to pay before being jailed by the City of Decatur at PPS' request for nonpayment of debts.

b.   Whether individuals who cannot afford to pay Decatur and PPS are entitled to consideration of alternatives to incarceration before being jailed for non-payment of debts.

c.   Whether individuals who cannot afford legal representation are entitled to the appointment of and representation by a lawyer in proceedings initiated and litigated by the City of Decatur that could result in incarceration.

d.   Whether arrests of individuals who cannot afford to pay debts owed to the City of Decatur and PPS are unlawful seizures.

e.   Whether acts by means of threats, harassment and intimidation for money are violations under the RICO act.

f.   Whether damages are appropriate for the class and, if so, what the terms of such relief should be.

**Rule 23(a)(3), Typicality**: The claims of Plaintiffs are typical of those asserted on behalf of the proposed class. The injuries of Plaintiffs and the proposed class all arise out of the same policies and practices of Defendants City of Decatur,

Emily Baggett in her individual and official capacity, Christy Miller in her individual and official capacity and Professional Probation Services.

The manner in which the City of Decatur, its employees and agents, and Professional Probation Services threatened, intimidated and incarcerated individuals who could not pay fees and fines affected the Representative Plaintiffs and the class they seek to represent the same.

The relief necessary to remedy the claims of the Representative Plaintiffs is the same relief that is necessary to remedy the claims of the putative class members in this case. The Representative Plaintiffs seek the following relief for individual claims and class claims asserted herein:

**Rule 23(a)(4), Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed class inasmuch as they are broadly representative, as reflected in the preceding paragraphs.  Plaintiffs are represented by attorneys who have experience litigating to trial violations of involving civil rights laws as well as experience litigating policies and practices that are deemed unconstitutional. The Representative Plaintiffs have retained counsel experienced in litigating major class actions and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience, and resources of the Representative Plaintiffs and their counsel to litigate competently the individual and class claims at issue satisfy the adequacy of

representation requirement under Fed.R.Civ.P. 23(a)(4).   Counsel knows of no conflict among members of the proposed class as each would benefit from the imposition of a remedy from the Defendants actions.

**Rule 23(b)(2) Certification:** Each of the Defendants has acted on grounds applicable to the class and pursuant to the unlawful policies and practices at issue in this case and identified in this Complaint.

The City of Decatur had a standard policy of placing individuals charged with municipal violations on probation with the company Professional Probation Services. The City of Decatur used its police force to aid in the threats and intimidation of the individuals on probation with Professional Probation Services by providing officers to be at or near the office of Professional Probation Services. The City of Decatur used its employees and agents in furtherance of the policy and custom of placing low income individuals unable to pay fines in full on probation with Professional Probation Services. The City of Decatur revoked and incarcerated individuals who were unable to pay fees to Professional Probation Services on top of any allocated fine.

The full time Municipal Prosecutor for the City of Decatur, Emily Baggett, assisted in the furtherance of the policy and custom of placing low income individuals who could not afford to pay fines in full on probation with Professional Probation Services.

Appointed Defense Attorney, Christy Miller, assisted in the furtherance of the policy and custom of placing low income individuals who could not afford to pay fines in full on probation with Professional Probation Services.

Professional Probation Services threatened, intimidated and coerced fees out of the named Plaintiffs and the proposed class and provided information to the City of Decatur which resulted in the incarceration of named Plaintiffs and the proposed class.

Alternatively, punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of the Defendants and not the individual characteristics of the Plaintiffs and are an allowable form of incidental monetary relief.

**Rule 23(b)(3) Alternative Certification:** The common questions of fact and law affecting the claims of the Representative Plaintiffs and the proposed class members, including but not limited to all common issues previously described predominate over the questions of law and fact affecting individual members and a class action is a superior method to adjudicate these claims, making it appropriate to decide the damages claims through the class mechanism. Particularly the factual and legal questions surrounding the general policies and practices of both the City of Decatur and PPS apply equally to all class members. Furthermore, class members have little ability to pursue these claims individually and it would be in

the interest of judicial economy to adjudicate the constitutionality of Defendants policies and practices in one proceeding.

The Northern District of Alabama is the most logical forum in which to litigate the claims of the Representative Plaintiffs and the proposed class in this case because the Defendant City, its agents and employees are located in Northern Alabama and the Defendant Professional Probation Services conducted its acts in Northern Alabama.

**Rule 23(c)(4) Issue Certification:** Class wide liability claims are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the class because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM

### VIOLATION OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION

*All Named Plaintiffs and Class Members vs. Defendant City of Decatur*

92. Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs one (1) to ninety-one (91) as if fully set forth herein.

93. Plaintiffs and those similarly situated have been threatened, harassed,

intimidated and jailed because of their inability to pay the fines and costs assessed upon them by the City of Decatur .

94.The Fourteenth Amendments due process and equal protection clauses prohibit automatically converting a fine-only sentence to a sentence of imprisonment if that person is unable to pay.

95.Defendant City of Decatur has a policy, practice or custom enforced through the authorization or acquiescence of its municipal police of jailing those who are unable to pay fees and fines to the Defendant PPS.

96.Defendant City of Decatur acted under color of law when their actions caused Plaintiffs to be threatened, harassed, intimidated and incarcerated. Defendant City of Decatur incarcerated the poor for their inability to pay and did not give those incarcerated individuals credit against their fees and fines for the time they were jailed.

97.Plaintiffs on behalf of themselves and the Class seek an award of damages for their injuries from Defendant City of Decatur.

98.Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 for actions taken by Defendant City of Decatur under color of law.

## SECOND CLAIM

## VIOLATION OF FOURTH AMENDMENT TO

## U.S. CONSTITUTION

*All Named Plaintiffs and Class Members vs. Defendant City of Decatur, Emily Baggett in her Individual and Official Capacity and Christy Miller in her Official and Individual Capacity.*

99. Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs one (1) to ninety-eight (98) as if fully set forth herein.

100.     Defendant City of Decatur has a policy, practice or custom enforced through the authorization of arresting and detaining individuals who are unable to pay court fines and costs.

101.     Defendant City of Decatur issues warrants for the arrests of individuals who cannot pay fees and fines based on information and requests for incarceration made by PPS.

102.     The Fourth Amendment prohibits unreasonable searches and seizures and requires any warrant to be judicially sanctioned and supported by probable cause.

103.     The arrests of the Plaintiffs and similarly situated individuals constitute unlawful search and seizure in violation of the Fourth Amendment to the U.S. Constitution.

104.     Defendant City of Decatur acted under color of law when it arrested and detained individuals for not being able to pay PPS.

105.     Plaintiffs on behalf of themselves and others in the class seek an award of damages for their injuries from Defendant City of Decatur.

106.     Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 for actions taken by the Defendant City of Decatur under color of law.


## THIRD CLAIM

## VIOLATION OF SIXTH AMENDMENT TO

## U.S. CONSTITUTION

*All Named Plaintiffs and Class Members vs. Defendant City of Decatur, Emily Baggett in her Individual and Official Capacity and Christy Miller in her Official and Individual Capacity*


107.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs one (1) to one hundred six (106)  as if fully set forth herein.

108.     Plaintiffs were jailed because of fines and costs owed to Defendant City of Decatur that they were unable to pay.

109.     Defendant City of Decatur calculated Plaintiffs jail sentences based on

a formula that took into account the amount of money owed in fines and costs.

110.     Plaintiffs were not represented by counsel when the fines and costs were assessed.

111.     Defendant City of Decatur violated Plaintiffs' rights under the Sixth Amendment to the U.S. Constitution by jailing Plaintiffs without informing them of their right to counsel, appointing counsel on their behalf, or obtaining a knowing, intelligent and voluntary waiver of counsel.

112.     Plaintiffs on behalf of themselves and the Class seek an award of damages for their injuries from the Defendant City of Decatur.

113.     Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 for actions taken by the Defendant City of Decatur under color of law.

## FOURTH CLAIM

## TORT OF FALSE IMPRISONMENT

*All Named Plaintiffs and Members of the Class vs. City of Decatur, Emily Baggett in her Individual and Official Capacity and Christy Miller in her Official and Individual Capacity*

114.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs one (1) to one hundred thirteen (113) as if fully set forth herein.

115.    Plaintiffs were arrested for being too poor to pay court costs, fines and fees.

116.    Plaintiffs were arrested by law enforcement officers employed by Defendant City of Decatur.

117.    Plaintiffs arrests were conducted by issuing warrants based solely on information it received from Defendant PPS without probable cause in violation of Alabama law.

118.    Defendant City of Decatur's employees, its Municipal Judge, Prosecutor and Police Officers, acting within the scope of their employment caused Plaintiffs to be detained, restrained, and imprisoned due to the their inability to pay PPS.

119.    Plaintiffs on behalf of themselves and the Class seek an award of damages for their injuries from Defendant City of Decatur.

## FIFTH CLAIM

## RACKETEER INFLUENCED AND CORRUPT

## ORGANIZATIONS ACT

### 18 U.S.C. §1962(c) & (d)

### *Plaintiffs and Class Members vs. PPS*

120.    Plaintiffs re-allege and incorporate by reference each and every

allegation contained in Paragraphs one (1) to one hundred eighteen (118)  as if fully set forth herein.

121.     Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO") are brought against the private probation company known as Professional Probation Services or "PPS".

122.     Plaintiffs are persons with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c) .

123.     Defendant PPS is a "RICO person" within the meaning of 18 U.S.C. § 1963(1) because it is an entity capable of holding a legal or beneficial interest in property.

124.     This claim for relief is directed against the private company PPS only and is not directed against Defendant City of Decatur.

### I.     The RICO Enterprise

125.     The Defendant PPS, together with the City of Decatur its agents and employees and the Decatur Municipal Court its agents and employees, constitute an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4). Such RICO Enterprise is an ongoing business relationship with the common purpose of maximizing the collection of court fines, court costs, and fees to PPS without consideration of the individual's ability to pay.

126.     The RICO Enterprise is engaged in interstate commerce in that its

activities and transactions relating to the collection of fines, fees and costs and the movement of the profits received by Defendant PPS pursuant to this operation requires movement and communications across state lines.

127. The members of the RICO Enterprise function as a continuing unit

128. PPS has violated 18 U.S.C. § 1962(c) because they are associated with an enterprise (the association-in-fact of PPS together with the City of Decatur and the Decatur Municipal Court) that is engaged in, or the activities of which affect interstate commerce and have directly or indirectly conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity.

129. PPS has violated 18 U.S.C. § 1962(d) because they have conspired with each other to violate 18 U.S.C. §1962(c) as described in the previous paragraph.

130. Specifically, PPS conducted or participated in and conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

     a.  Extortion in violation of the Hobbs Act, 18 U.S.C. §1951;

     b.  Extortion in violation of Ala. Code § 13A-8-13; and

     c.  Extortion in violation of the Travel Act, 18 U.S.C. §1952

**Predicate Acts**

**Extortion Acts**

131. PPS have on their own and in conspiracy with other participants in the RICO enterprise obtained by threat $35.00 probation fee from Plaintiffs with the intent to deprive them of money.

132. Specifically, PPS individually and in conspiracy with the other participants in the RICO enterprise threatened Plaintiffs that if they do not pay they (a) will be incarcerated; (b) will have their probation revoked; (c) will be accused of violating the terms of their probation order; and (d) will be subject to testimony against them by PPS regarding non-payment without revealing the reasons for non-payment which includes but it not limited to inability to pay.

133. The threats and intimidation are motivated out of a desire to extort monies.

134. The fees being usurped by means of threats and intimidation were placed upon Plaintiffs for time frames that were calculated and or determined by PPS.

135. Because of the threats , Plaintiffs paid the fees demanded by PPS.

**Extortion in violation of the Hobbs Act, 18 U.S.C. §1951**

136. Plaintiffs re-allege and incorporate by reference the general extortionate act allegations set forth herein.

137. PPS has individually and in conspiracy with other participants in the RICO enterprise obtained fees from Plaintiffs with consent that was induced by the wrongful use of fear in violation of 18 U.S.C.

138. The proceeds obtained by PPS's extortionate activities were used in commerce and therefore affected commerce or the movement of any article or commodity in commerce as these terms are understood by 18 U.S.C.

### Extortion in violation of Ala. Code §13A-8-13

139. Plaintiffs re-allege and incorporate by reference the general extortionate act allegations set forth herein.

140. PPS has, on their own, and in conspiracy with other participants in the RICO enterprise obtained by threat  fees from Plaintiffs with intent to deprive them of this money, in violation of Ala. Code §13A-8-13.

### Extortion in violation of the Travel Act, 18 U.S.C. §1952

141. Plaintiffs re-allege and incorporate by reference the general extortionate act allegations set forth herein.

142. PPS has individually and in conspiracy with other participants in the RICO enterprise obtained by threat fees from Plaintiffs with intent to deprive them of this money in violation of 18 U.S.C. §1952 (Travel Act) and Ala. Code § 13A-8-13.

143. PPS has traveled in interstate commerce and has used the mail and facilities in interstate commerce to distribute the proceeds of the extortionate acts by operating a corporate entity (PPS) that is based outside of Alabama but operating and performing the extortionate acts in Decatur, Alabama in violation of 18 U.S.C. § 1952(a)(3).

**Pattern of Related Racketeering Acts**

144. PPS has engaged in the racketeering activity described in this Complaint repeatedly over a decade and with respect to thousands of criminal defendants in the Decatur City Municipal Court. These racketeering acts are part of the enterprise's regular way of doing business.

145. PPS through their RICO enterprise relied on the racketeering acts described in this Complaint to conduct their regular business activities.

146. The racketeering acts of PPS are done for the purpose of maximizing the collection of court fines, court costs and fees to PPS without consideration of the individual's ability to pay.

147. The racketeering acts of PPS have resulted in similar results and similar injuries to Plaintiffs as they have all been subjected to fees paid to PPS as a result of PPS's unlawful conduct.

148. PPS has directed their racketeering activity at similar victims. Plaintiffs specifically and generally are all Decatur City Municipal Court defendants who cannot afford to pay the entirety of their fines, fees, costs and restitution.

**Injury**

149. As a direct and proximate result of PPS and other participants in the RICO Enterprise's willful, knowing and intentional acts discussed in this Complaint, Plaintiffs have suffered injuries to their property. Plaintiffs were all subjected to the payment of probation fees paid to PPS and were forced to continue paying these fees even when they could not afford to do so resulting in economic harm to themselves and their families.

150. Plaintiffs are entitled to an award of damages in an amount to be determined at trial, including treble damages and attorney fees and costs associated with this action.

## SIXTH CLAIM

## DAMAGES

## ABUSE OF PROCESS

### *Plaintiffs and Members of Class vs. PPS*

151. Plaintiffs re-allege and incorporate by reference each and every allegation in Paragraphs one (1)  to one hundred and forty-nine (149) as if fully set forth herein.

152. PPS abused the process of probation in the City of Decatur and Decatur's Municipal Court by using the probation order granting them authority to supervise probation to extort money from Plaintiffs for their own profit.

153. PPS intentionally used the probation orders in this way, by threatening Plaintiffs and failing to provide a process for evaluating or presenting indigency to the court when Plaintiffs were unable to pay.

154. Plaintiffs are entitled to an award of damages in an amount to be determined at trail, including punitive damages.

## VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully pray that the Court grant the following relief:

a.  Assume jurisdiction over this action;

b.  Certify a class under Rules 23(a), (b2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, represented by Plaintiffs;

c.  Award compensatory damages against all Defendants;

d.  Award punitive damages against Defendants Emily Baggett, Christy Miller and PPS;

e.  Award Plaintiffs costs, including attorney's fees and;

f.  Order such other relief as the Court deems just and appropriate.

DATED THIS _____ DAY OF _____ 2016.



Respectfully Submitted,

/s Byron R. Perkins (ASB-0183-N75B )

/s Terrinell Lyons (ASB-0346-N46T)

/s Roderick T. Cooks (ASB-5819-O78R)

/s Lee Winston (ASB-6407-O72L)

*Attorneys for Plaintiffs*

**OF COUNSEL**
**PERKINS-LAW, LLC**
2170 Highland Ave. South, Suite 100
Birmingham, Al 35205
(205) 558-4696 Phone
(205) 383-1910 Facsimile
bperkins@perkins-law.com
tlyons@perkins-law.com

**WINSTON COOKS, LLC**
Financial Center
505 North 20th Street
Suite 815
Birmingham, AL 35203
(205) 208-7326 Phone
 (205) 278-5876 Facsimile
rcooks@winstoncooks.com
lwinston@winstoncooks.com


**PLEASE SERVE THE DEFENDANTS BY CERTIFIED MAIL:**

**City of Decatur**
**Jessica Hayes, Municipal Clerk**
P.O. Box 488
Decatur, AL 35602


**Emily Baggett, Esq.**
**Decatur Municipal Court**
Decatur City Hall
P.O. Box 488
Decatur, AL 35602

**Christy Miller, Esq.**
610 Mynatt Street, SW
Hartselle, AL 35640

And

**Professional Probation Services**
**c/o CT Corporation System**
2 North Jackson Street, Ste. 605
Montgomery, AL 36104