# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA MALONE, HOLLY KIMMONS, MARK BLEDSOE, ANDY FENNELL, and TRAVIS MOSELY, on behalf of themselves and those similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case Number 5:16-CV-00483-MHH |
| CITY OF DECATUR, ALABAMA; EMILY BAGGETT; CHRISTY MILLER; UNIVERSAL HEALTH SERVICES, INC.; and PROFESSIONAL PROBATION SERVICES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This matter is before the Court on the defendants' motions to dismiss the second amended complaint. (Docs. 42, 44, 45, 48, 53). The parties have fully briefed the motions. After considering the parties' submissions, the Court grants in part and denies in part the motions to dismiss as set forth below.

## STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule

1

12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)); *Twombly*, 550 U.S. at 555 (Rule 8 generally does not require "detailed factual allegations.").

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). In other words, "[o]n a motion to dismiss, the facts stated in the . . . complaint and all reasonable inferences therefrom are taken as true." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citing *Stephens v. Dep't*

*of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990)). Nevertheless, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Pursuant to this standard, the Court describes the facts alleged in the second amended complaint in the light most favorable to the plaintiffs.

## BACKGROUND

Plaintiffs Samantha Malone, Holly Kimmons, Mark Bledsoe, Andy Fennell, and Travis Mosely are residents of the City of Decatur, Alabama. (Doc. 41, ¶¶ 15–19). Defendant City of Decatur is a municipal corporation located in Morgan County, Alabama. (Doc. 41, ¶ 20). Defendant Emily Baggett is the prosecutor for Decatur. (Doc. 41, ¶ 21). Defendant Christy Miller is one of several attorneys who may be appointed to represent indigent criminal defendants in the Decatur Municipal Court. (Doc. 41, ¶ 22). Defendant Professional Probation Services (PPS) is a corporation with its principal place of business in Georgia. (Doc. 41, ¶ 24). PPS is registered with the Alabama Secretary of State and was actively engaged in business in Alabama and Decatur at all times relevant to this case. (Doc. 41, ¶ 24). PPS is a wholly owned subsidiary of defendant Universal Health Services, Inc. (UHS), one of the country's largest health care management companies. (Doc. 41, ¶¶ 24–25). The plaintiffs assert that the defendants have been "extorting money from

impoverished individuals under threat of jail" and "misusing the criminal justice system and probation process for profit." (Doc. 41, ¶ 1).

The plaintiffs allege that the City of Decatur contracted with PPS to provide probation services to the Municipal Court. (Doc. 41, ¶ 8). When an individual appearing before the Municipal Court is assessed fines or costs and cannot pay them in full, the Municipal Court orders that individual to serve a suspended sentence and places the individual on probation with PPS for a number of months. (Doc. 41, ¶¶ 36, 39). According to the plaintiffs, each month that an indigent defendant is on PPS-administered probation, the Municipal Court requires the defendant to pay a specified amount toward his fine and a $35.00 supervision fee to PPS. (Doc. 41, ¶ 40). The plaintiffs allege that when an individual cannot make one of the monthly payments, PPS alerts the Municipal Court, and the Municipal Court initiates probation revocation proceedings. (Doc. 41, ¶ 47). The Municipal Court charges individuals who cannot make a monthly payment with violation of their probation, increases the length of the term of probation, and imposes additional fees and fines. (Doc. 41, ¶ 50).

The plaintiffs allege that they were incarcerated under this scheme for failure to pay the fees charged by PPS. They also allege that the City, through its contract with PPS, "has affected hundreds of low income people who were issued traffic

4

tickets and/or arrested for misdemeanors." (Doc. 41, ¶ 11). In their second amended complaint, the plaintiffs assert the following claims on behalf of themselves and a potential class of similarly situated individuals: violation of the Fourteenth Amendment against the City of Decatur; violation of the Fourth Amendment against the City of Decatur, Ms. Baggett, and Ms. Miller; violation of the Sixth Amendment against the City of Decatur, Ms. Baggett, and Ms. Miller; false imprisonment against the City of Decatur, Ms. Baggett, and Ms. Miller; RICO violations (18 U.S.C. § 1962(a) - (d)) against UHS and PPS; and abuse of process against PPS. (Doc. 41, ¶¶ 141–219).

The plaintiffs seek compensatory and punitive damages and "such other relief as the Court deems just and appropriate." (Doc. 41, pp. 46-47). The defendants have moved to dismiss most of these claims. (Docs. 42, 44, 45, 48, 53).

## ANALYSIS

### I. Ms. Baggett's Motion to Dismiss

Ms. Baggett asks the Court to dismiss all claims against her because she is entitled to prosecutorial immunity. The plaintiffs argue that Ms. Baggett is not entitled to immunity because she was "acting at the behest of a third-party intent on maximizing its profits on the backs of indigent defendants." (Doc. 18, p. 16). The plaintiffs allege the following facts with respect to Ms. Baggett:

- "Defendant Emily Baggett ("Baggett") acting under color of law in her individual and official capacity has prosecuted individuals in the [C]ity of Decatur for being unable to pay fines and fees on municipal violations using a policy, practice or custom in violation of said individuals' constitutional rights." (Doc. 41, ¶ 5).[1]

- "Defendant Emily Baggett ("Baggett") is the Prosecutor for the City of Decatur, Alabama. The Prosecutor position for the City of Decatur is a full time job." (Doc. 41, ¶ 21).

- "The full time Prosecutor is Attorney Emily Baggett." (Doc. 41, ¶ 29).

- "Defense Counsel is not appointed in every case and the City's full time prosecutor Emily Baggett informs the Defendants that they are going to be placed on probation." (Doc. 41, ¶ 33).

- "The injuries of Plaintiffs and the proposed class all arise out of the same policies and practices of Defendants City of Decatur, Emily Baggett in her individual and official capacity, Christy Miller in her individual and official capacity and Professional Probation Services, the wholly owned subsidiary of Universal Health Services, Inc." (Doc. 41, pp. 26–27).

- "The full time Municipal Prosecutor for the City of Decatur, Emily Baggett, assisted in the furtherance of the policy and custom of placing low income individuals who could not afford to pay fines in full on probation with Professional Probation Services." (Doc. 41,

---

[1] The plaintiffs sued Ms. Baggett in her individual and official capacities. "[O]fficial capacity suits generally represent only another way of pleading an action against the entity of which an officer is an agent." *Brandon v. Holt*, 469 U.S. 464, 472, n.21 (1985). Such suits are "in actuality, suits directly against [the governmental entity] that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists the need to bring official-capacity actions against local governmental officials, because local government units can be sued directly." *Busby*, 931 F.2d at 776. Accordingly, the Court will dismiss the plaintiffs' claims against Ms. Baggett in her official capacity.

pp. 28–29).

In sum, the plaintiffs' factual allegations concerning Ms. Baggett pertain to her role as a municipal prosecutor. (Doc. 41, ¶ 5).

Prosecutorial immunity has its roots in judicial immunity. *Hart v. Hodges*, 587 F.3d 1288, 1294 (11th Cir. 2009) ("[T]raditional common-law immunities for prosecutors … derived from immunities recognized for judges …"). Executive branch public officials are entitled to absolute immunity from damages claims in actions for activities that "are intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In determining whether certain activities are intimately associated with the judicial phase of the criminal process, a functional approach has evolved that "looks to the nature of the function performed, not to the identity of the person who performed it." *Hart*, 587 F.3d at 1295-96 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The Supreme Court has applied functional analysis and determined that prosecutors are immune from claims for damages in a number of scenarios. *See Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (failure to institute a system of information-sharing among deputy district attorneys regarding confidential jailhouse informants); *Burns v. Reed*, 500 U.S. 478 (1991) (court appearance in support of an application for a search warrant and presentation of evidence at that hearing); *Malley v. Briggs*, 475

U.S. 335, 342–43 (1986) (malicious prosecution).  Like judges, "prosecutors do not

enjoy absolute immunity from [declaratory relief] claims." *Tarter v. Hury*, 646 F.2d

1010, 1012 (5th Cir. 1981).[2]

"Applying these principles, [the Eleventh C]ircuit has emphasized that, '[a]

prosecutor enjoys absolute immunity from allegations stemming from the

prosecutor's function as advocate.'" *Hart*, 587 F.3d at 1295 (quoting *Jones v.

Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)).  A prosecutor's function as an

advocate encompasses "acts undertaken in preparing for the initiation of judicial

proceedings or for trial, and which occur in the course of his role as an advocate."

*Hart*, 587 F.3d at 1295 (quoting *Jones* 174 F.3d at 1281) (internal quotation marks

---

[2] Until 1996, plaintiffs could seek injunctive and declaratory relief for claims against judicial
officers.  Congress amended 42 U.S.C. § 1983 through the Federal Courts Improvement Act of
1996 and limited plaintiffs to declaratory relief, unless a judge violated a prior declaratory decree
or declaratory relief is not available.  As amended, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State ... subjects, or causes to be subjected, any citizen of the United
> States ... jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper proceeding for redress, except that
> in any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a declaratory
> decree was violated or declaratory relief was unavailable

42 U.S.C. § 1983.  The Court assumes for purposes of this order that the limitation also applies to
prosecutors.

On a separate note, per *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc),
*Tarter* is binding authority for courts in the Eleventh Circuit because the former Fifth Circuit Court
of Appeals issued the *Tarter* decision before October 1, 1981. *Id.* at 1209.

omitted). Specifically, this includes, and absolute immunity thus extends to, "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate . . . complaints about the prison system, [and] threatening . . . further criminal prosecutions . . . ." *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979).

The conduct about which the plaintiffs complain with respect to Ms. Baggett pertains to her role as an advocate. Even if the plaintiffs can demonstrate that Ms. Baggett chose to prosecute individuals to benefit PPS, she is immune from claims for damages for malicious prosecution. The plaintiffs assert that a prosecutor's motive in initiating an action may overcome immunity from damages for malicious prosecution, but the plaintiffs offer no binding authority for their assertion. The plaintiffs do not request declaratory relief. Accordingly, because Ms. Baggett is entitled to absolute immunity from the plaintiffs' damages claims for her alleged prosecution of individuals in the City of Decatur, the Court will grant Ms. Baggett's motion to dismiss the plaintiffs' claims against her.

## II.    Ms. Miller's Motion to Dismiss

Ms. Miller asks the Court to dismiss all claims against her. (Doc. 42, p. 2). She argues that the constitutional claims against her cannot succeed because she is

not a state actor, and the plaintiffs do not allege facts against her to state a claim of false imprisonment. (Doc. 35, p. 2).

The plaintiffs allege the following facts with respect to Ms. Miller:

- "Defendant Christy Miller ("Miller") acting under color of law in her individual and official capacity was appointed to defend individuals in the City of Decatur Municipal Court and failed to provide any defense to individuals but rather told individuals they had to sign up for probation with Professional Probation Services." (Doc. 41, ¶ 6).

- "Defendant Christy Miller ("Miller") is one of several attorneys appointed to defendants in the City of Decatur Municipal Court with a large percentage of the appointments in the Municipal Court for the City of Decatur." (Doc. 41, ¶ 22).

- "Attorney Christy Miller receives a large percentage of the defense appointments in the Decatur Municipal Court." (Doc. 41, ¶ 31).

- "In most cases, when defense counsel is appointed it is Attorney Christy Miller and Miller simply directs the defendants to plead guilty and they will be placed on probation with Professional Probation Services." (Doc. 41, ¶ 34).

- "Over the time period relevant to this Complaint, the City of Decatur, its agents the Municipal Judge, the City Prosecutor, appointed counsel Christy Miller[,] the Decatur City Police[,] and UHS and PPS were fully aware of the customs and practices alleged and all acquiesced to these practices and customs." (Doc. 41, ¶ 53).

- "The injuries of Plaintiffs and the proposed class all arise out of the same policies and practices of Defendants City of Decatur, Emily Baggett in her individual and official capacity, Christy Miller in her individual and official capacity and Professional Probation Services, the wholly owned subsidiary of Universal Health Services, Inc." (Doc. 41, pp. 26–27).

10

- "Appointed Defense Attorney, Christy Miller, assisted in the furtherance of the policy and custom of placing low income individuals who could not afford to pay fines in full on probation with Professional Probation Services (owned by Universal Health Services, Inc.)." (Doc. 41, p. 29).

In sum, the plaintiffs allege that Ms. Miller received many appointments to defend a large number of indigent individuals in the City of Decatur Municipal Court, directed those individuals to plead guilty, and told them that they would be directed to participate in PPS-administered probation. Plaintiffs also allege that Ms. Miller was aware of, acquiesced to, and "assisted in the furtherance of the policy and custom of placing low income individuals who could not afford to pay fines in full on probation with [PPS]." (Doc. 41, p. 29).

With respect to the plaintiffs' constitutional claims, Ms. Miller argues that she is not liable under § 1983 because she is not a state actor. (Doc. 35, pp. 3–6). The plaintiffs' allegations against Ms. Miller concern her role as counsel for indigent defendants. Because the plaintiffs have not alleged that Ms. Miller is employed with the City of Decatur, they have not alleged that she is a state actor.

Even if Ms. Miller is not a state actor, she may be liable under § 1983 if she acted in concert with public officials in depriving the plaintiffs of their constitutional rights. *Wilson on behalf of Wilson v. McFadden*, 703 Fed. Appx. 822, 824 (11th Cir. 2017) (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)); *see also*

*Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010).

> "[P]rivate defendants can be held liable in a § 1983 action if they act in concert with . . . state officials in depriving a plaintiff of constitutional rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990). To prove a § 1983 conspiracy, a plaintiff must show the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy. *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992). An "understanding" and "willful participation" between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability. *Bendiburg*, 909 F.2d at 469.

*Wilson*, 703 Fed. Appx. at 824. The plaintiffs allege that "the City of Decatur, its agents the Municipal Judge, the City Prosecutor, appointed counsel Christy Miller[,] the Decatur City Police[,] and UHS and PPS were fully aware of the customs and practices alleged and all acquiesced to these practices and customs." (Doc. 41, ¶ 53).

Acquiescence falls short of the conduct that a plaintiff must allege to support a conspiracy theory. Acquiescence suggests passive submission as opposed to willful participation. Therefore, the plaintiffs have not alleged conduct that would support a constitutional claim against Ms. Miller.

With respect to the plaintiffs' claim for false imprisonment, Ms. Miller argues that the plaintiffs have not made sufficient factual allegations against her. (Doc. 35, pp. 6–8).

> As codified in Ala. Code 1975, § 6–5–170, the tort of false imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal

12

liberty." Under that statute, "[f]or there to be a false imprisonment, there must be some direct restraint of the person," although "[a]ny exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Crown Central Petroleum Corp. v. Williams*, 679 So.2d 651, 653 (Ala. 1996).

*Dolgencorp, Inc. v. Pounders*, 912 So. 2d 523, 527–28 (Ala. Civ. App. 2005).

"[O]ne who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." *Dolgencorp*, 912 So. 2d at 528 (quoting Restatement (Second) of Torts § 45A (1965)).

Under this standard, allegations that Ms. Miller, in her role as appointed defense counsel, counselled individuals to plead guilty and accept probation do not state a claim for false imprisonment. Plaintiffs have alleged that Ms. Miller caused them to be confined unlawfully. Thus, the Court will grant Ms. Miller's motion to dismiss the claims against her.

## III. City of Decatur's Motion to Dismiss

The City of Decatur asks the Court to dismiss all claims against it. (Doc. 44, p. 1).

### A. Constitutional Claims

Decatur argues that the plaintiffs' § 1983 constitutional claims against the city should be dismissed because the plaintiffs "fail to allege their injuries were the result

13

of a policy or custom of the City that was created by individuals who possessed final

policymaking authority on behalf of the City." (Doc. 28, p. 15).

> [M]unicipalities "can be sued directly under § 1983 for monetary,
> declaratory, or injunctive relief where, as here, the action that is alleged
> to be unconstitutional implements or executes a policy statement,
> ordinance, regulation, or decision officially adopted and promulgated
> by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New
> York*, 436 U.S. 658, 690[] (1978). This liability is premised on a
> constitutional violation carried out by the County itself and cannot be
> based on theories of respondeat superior or vicarious liability. *See City
> of Canton, Ohio v. Harris*, 489 U.S. 378, 385[] (1989).

> To establish a county's policy, a plaintiff must "identify either (1) an
> officially promulgated county policy or (2) an unofficial custom or
> practice of the county shown through the repeated acts of a final
> policymaker for the county." *Grech v. Clayton Cty., Ga.*, 335 F.3d
> 1326, 1329 (11th Cir. 2003) (*en banc*). As we have recognized, "a
> county rarely will have an officially-adopted policy of permitting a
> particular constitutional violation." *Id.* at 1330. Thus, most plaintiffs
> "must show that the county has a custom or practice of permitting [the
> violation] and that the county's custom or practice is the moving force
> behind the constitutional violation." *Id.* (quotations and alteration
> omitted).

*Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 819 (11th Cir. 2017). "A

custom or practice, while not adopted as an official formal policy, may be so

pervasive as to be the functional equivalent of a formal policy." *Grech*, 335 F.3d at

1330 n.6 (citing *Monell*, 436 U.S. at 690-91; *Church v. City of Huntsville*, 30 F.3d

1332, 1343 (11th Cir.1994)). A plaintiff must "'identify those officials who speak

with final policymaking authority for that local governmental entity concerning the

act alleged to have caused the particular constitutional violation in issue.'" *Knight*, 856 F.3d at 819 (quoting *Grech*, 335 F.3d at 1330).

In this case, the plaintiffs allege that the City of Decatur, among other things, implemented and followed a policy, practice or custom" that used municipal law enforcement officers "to threaten, harass and intimidate individuals on probation with UHS/PPS for payment of fees, fines and costs" and to "arrest[] those who could not or cannot pay fines and costs," and a policy, practice or custom of "incarcerating individuals without probable cause when those individuals could not or cannot pay the money owed to the Court and to UHS/PPS," and a policy, practice or custom of refusing to give individuals incarcerated for their inability to pay fines "monetary credit against the fees and fines for the days they were incarcerated." The plaintiffs also allege that the city "used its full time Prosecutor and Appointed Defense Counsel in furtherance of its policy, practice and custom of revoking, arresting and incarcerating low income individuals who could not afford to pay fees and fines." (*See* Doc. 41, pp. 24–25). The plaintiffs allege that "Decatur has worked with PPS implementing policies, practices and customs of arresting individuals who could not pay their fees and fines in full and jailing them until monies are paid." (Doc. 41, ¶ 52). The plaintiffs allege that the Decatur police department (*see, e.g.*, Doc. 41, ¶¶ 4, 44–46), Ms. Baggett (*see, e.g.*, Doc. 41, ¶ 4), and Decatur (*see, e.g.*, Doc. 41,

¶ 52) acted pursuant to the City's policy of incarcerating individuals for failure to pay fines and fees.

Ms. Baggett, as City prosecutor, acts as an agent of the City when she prosecutes individuals for municipal violations. *Cf. Pusey v. City of Youngstown*, 11 F.3d 652, 657–58 (6th Cir. 1993) ("Because Cronin acts as a state agent when prosecuting state criminal charges, the suit against Cronin in her official capacity is to be treated as a suit against the state."). The City of Decatur does not argue that its police department does not act pursuant to municipal policy or that the City did not contract with PPS. (*See* Doc. 28, pp. 25–31). Thus, the plaintiffs have adequately alleged that the City of Decatur had a variety of policies or practices relating to its treatment of individuals who could not pay fines and fees to PPS, and the plaintiffs have identified the municipal officials whose acts are alleged to have caused the constitutional violations at issue. These allegations are sufficient.

## B.    Standing

The City of Decatur argues that plaintiffs lack standing with respect to their claims based on Decatur police officers arresting individuals at PPS offices because none of the named plaintiffs asserted that they were personally arrested or intimidated by officers at PPS offices. (Doc. 28, p. 37). The plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered

by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). The named plaintiffs do allege that the City of Decatur had a policy of using its police officers to intimidate individuals at PPS offices and that they (the named plaintiffs) were so intimidated. (Doc. 41, ¶¶ 44–46; Doc. 41, p. 27; Doc. 41, ¶¶ 142, 145). These allegations are sufficient at this stage of litigation.

The City of Decatur argues that the plaintiffs lack standing to pursue "injunctive relief because they cannot allege they are likely to be subjected to the alleged unconstitutional practices resulting from the City's contract with PPS in the future." (Doc. 28, pp. 40–42). Although the plaintiffs have requested "such other relief as the Court deems just and appropriate," the plaintiffs have not specifically requested declaratory or injunctive relief in the operative complaint. (*See generally* Doc. 41). The Court would anticipate an express request if the plaintiffs wanted to pursue injunctive or declaratory relief. Accordingly, the City of Decatur's argument on this point is moot.

## C.    False Imprisonment

Decatur argues that it cannot be vicariously liable for false imprisonment when its agents are immune from suit. (Doc. 28, p. 44). Under Alabama law, a "municipality may be liable [] under the doctrine of respondeat superior for injuries

that result from the wrongful conduct of its agents or officers in the line of duty."
*City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995) (citing Ala. Code § 11-47-190; *Ellison v. Town of Brookside*, 481 So. 2d 890, 891 (Ala. 1985)). "The vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant." *Hollis v. City of Brighton*, 885 So. 2d 135, 141–42 (Ala. 2004). "Thus, if a putative servant is not liable, either because he is innocent or because he is immune, no liability exists to be visited upon the putative master under the rule of respondeat superior." *Hollis*, 885 So. 2d at 142.

The plaintiffs assert that Decatur police officers, Ms. Miller, and Ms. Baggett are responsible for their false imprisonment. As discussed above, Ms. Baggett is immune from liability on this claim, and the plaintiffs have not alleged adequate facts against Ms. Miller on this claim.

With respect to Decatur police officers, Alabama Code § 6-5-338 provides that a law enforcement officer is "immun[e] from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). Thus, Alabama law bars suit against law enforcement officers "exercising judgment in the enforcement of criminal laws of the State, including but not limited to, law enforcement officers' arresting or attempting to arrest persons" unless the officer acted willfully,

maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000); *see also Ex parte City of Midfield*, 161 So. 3d 1158, 1163 (Ala. 2014).

The United States Supreme Court has held that it is unconstitutional to imprison defendants solely because they cannot afford to pay court costs, a fine, or restitution—the very conduct which the plaintiffs allege against the City of Decatur and its police officers. *See Bearden v. Georgia*, 461 U.S. 660, 666-68 (1983) (unconstitutional probation revocation and subsequent prison sentence due to inability to afford restitution payments); *Tate v. Short*, 401 U.S. 395, 397-98 (1971) (unconstitutional imprisonment for inability to afford traffic violation fines). The plaintiffs have alleged, for example, that the City of Decatur "us[ed] its police department to arrest and detain poor defendants who cannot pay fines and costs owed to the Municipal Court." (Doc. 41, p. 4). Discovery may produce facts that contradict this and other related allegations in the operative complaint, but for now, the allegation is adequate to state a claim against the City and its police officers.

## IV.    PPS's Motion to Dismiss

PPS asks the Court to dismiss the plaintiffs' civil RICO claims brought pursuant to 18 U.S.C. § 1962. (Doc. 48). PPS argues that the plaintiffs have not

alleged a predicate act to establish a pattern of racketeering activity.  (Doc. 49, p.

12).  The Court agrees.

RICO provides a private cause of action for treble damages to persons injured

in their business or property by reason of a violation of 18 U.S.C. § 1962.  18 U.S.C.

§ 1964(c).[3]  Section 1962 prohibits an individual from "participating in the conduct

---

[3]  Section 1962 provides:

    (a)     It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

    (b)     It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

    (c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

    (d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). It also "prohibits investing income gained from a pattern of racketeering activity into such an enterprise." 18 U.S.C. § 1962(a); *Almanza*, 851 F.3d at 1066. Section 1962 also states that it "shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Finally, § 1962 "makes it unlawful to conspire to violate any of the other three prohibitions." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097 (2016) (citing 18 U.S.C. § 1962(d)).

Thus, to state a claim for a RICO violation under any subsection of § 1962, the plaintiffs must allege that the defendants engaged in a pattern of racketeering activity. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (per curiam) (internal quotation marks omitted)) ("Four elements must be proven in a RICO case: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"). "A pattern is established by at least two acts of racketeering activity the last of which

---

18 U.S.C. § 1962.

occurred within ten years . . . after the commission of a prior act of racketeering activity." *Lehman*, 727 F.3d at 1330 (quoting *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000)). These predicate acts must be related to one another and demonstrate criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

The plaintiffs allege that PPS engaged in predicate acts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951; extortion in violation of Ala. Code § 13A-8-13; and extortion in violation of the Travel Act, 18 U.S.C. § 1952. (Doc. 41, § 190).

## A.    Hobbs Act

To make a civil RICO claim under the Hobbs Act, a plaintiff must allege that a defendant "obstructed, delayed, or affected commerce (or attempted to do so), by robbery or extortion." *Frank v. Lake Worth Utils.*, 464 Fed. Appx. 802, 804 (11th Cir. 2012). Extortion is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). A defendant's action is "wrongful" if the defendant uses "a wrongful means to achieve a wrongful objective." *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002) (citing *United States v. Enmons*, 410 U.S. 396, 399–400 (1973)). A defendant

who threatens another for money seeks a wrongful objective if the defendant lacks a "lawful claim" to the money. *Pendergraft*, 297 F.3d at 1205.

Here, PPS had a lawful claim to fines and fees. *See* Ala. Code §§ 12-14-13(d)(7); 12-14-13(i). Though the plaintiffs may succeed in proving that under *Bearden* and *Tate*, the defendants violated the Constitution if they incarcerated indigent defendants who could not afford to pay fines or fees, the plaintiffs have not alleged facts that would allow them to establish that PPS did not have a lawful claim to the fines and fees. Therefore, the plaintiffs have not alleged facts to support an extortion theory under the Hobbs Act.

### B.    Alabama Code § 13A-8-13

The plaintiffs' extortion theory under state law fails for the same reason. Under Alabama law, "[a] person commits the crime of extortion if he knowingly obtains by threat control over the property of another, with intent to deprive him of the property." Ala. Code 1975, § 13A–8–13; *Preskitt v. Lyons*, 865 So. 2d 424, 429 (Ala. 2003). Extortion under Alabama law, as under the Hobbs Act, requires wrongful conduct. *See Collier v. State*, 55 Ala. 125, 128 (1876) ("Private and public wrong must concur, to constitute extortion."); *Robinson v. State*, 484 So. 2d 1197, 1199 (Ala. Crim. App. 1986) (quoting §§ 13A-8-13 through 13A-8-15 Commentary) ("Extortion under § 13A-8-13 is a theft-related offense and 'usually is nothing more

than a wrongful acquisition of property by intimidation with a larcenous intent.'"). Thus, the plaintiffs have not adequately alleged that PPS engaged in conduct that violated § 13A-8-13.

## C.    Travel Act

A violation of the Travel Act, 18 U.S.C. § 1952, requires unlawful activity, which can include "extortion" in violation of state or federal law.  18 U.S.C. § 1952(b)(i)(2).  For the reasons discussed, the plaintiffs have not alleged facts to show that PPS engaged in extortion under the Hobbs Act or Alabama law.  Thus, the plaintiffs have not alleged a violation of the Travel Act as a predicate act to show a pattern of racketeering activity.  *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009), *aff'd*, 355 Fed. Appx. 508 (2d Cir. 2009) (Travel Act violation cannot serve as a RICO predicate act if the underlying act of extortion is not indictable under the Hobbs Act or state law).

Because the plaintiffs have not adequately alleged predicate acts of extortion, the plaintiffs' RICO claims fail as a matter of law.  The Court will dismiss the plaintiffs' RICO claims against PPS.

## V.    UHS's Motion to Dismiss

UHS asks the Court to dismiss the plaintiffs' claims against it.  (Doc. 53). Like PPS, UHS argues that the plaintiffs have not alleged a predicate act of extortion

24

to support their RICO claims. (Doc. 54, pp. 3–8). For the reasons stated, the Court agrees and will dismiss the plaintiffs' claims against UHS.

## VI. Plaintiff Mosely's Claims

The City of Decatur and PPS ask the Court to dismiss Mr. Mosely's claims. The defendants argue that the statute of limitations bars Mr. Mosely's claims. (Doc. 28, p. 48; Doc. 49, pp. 8–10). Plaintiffs do not have to "'negate an affirmative defense in [their] complaint.'" *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (alteration in *La Grasta*) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). "The statute of limitations is an affirmative defense, so 'a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.'" *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017), c*ert. denied sub nom. Boyd v. Dunn*, No. 17-962, 2018 WL 1369262 (Mar. 19, 2018) (quoting *La Grasta*, 358 F.3d at 845–46). Accordingly, the Court will deny the defendants' motions to dismiss Mr. Mosely's claims. The defendants may raise these arguments again at the summary judgment stage.

## CONCLUSION

Based on the foregoing, the Court grants Ms. Miller's motion to dismiss (Doc. 42), Ms. Baggett's motion to dismiss (Doc. 45), and UHS's motion to dismiss (Doc.

53).  The Court denies the City of Decatur's motion to dismiss.  (Doc. 44).  The Court grants PPS's motion to dismiss with respect to the plaintiffs' RICO claims and denies PPS's motion to dismiss with respect to the plaintiffs' other claims.  (Doc. 48).  The parties shall please confer and submit their Rule 26(f) Report within 14 days of the date of this order.

      **DONE** and **ORDERED** this October 9, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE