FILED
2019 Dec-09 PM 03:52
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SAMANTHA MALONE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:16-cv-00483-LCB** |
| | ) | |
| **CITY OF DECATUR, ALABAMA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### BRIEF IN SUPPORT OF
### MOTION OF CITY OF DECATUR, ALABAMA
### FOR PARTIAL JUDGMENT ON THE PLEADINGS

_____

**George W. Royer, Jr.**
**David J. Canupp**
**J. Bradley Emmons**
**LANIER FORD SHAVER & PAYNE, P.C.**
**P. O. Box 2087**
**Huntsville, AL 35804**

*Attorneys for Defendant City of Decatur, Alabama*

TABLE OF CONTENTS

I.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Matters Alleged in the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.   Judge Cook is Not a City Policymaker, and His Judicial Acts
           Cannot Constitute City Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.   Plaintiff's Sixth Amendment Claim is Premised Entirely on
           Judicial Acts and, Therefore, Must Be Dismissed. . . . . . . . . . . . . . 16

      C.   Count II Must Be Dismissed Because the Issuance of Warrants is
           a Judicial Act for Which the City May Not Be Held Liable. . . . . . . 20

      D.   Plaintiffs' Fourteenth Amendment Claims Are Not Tenable. . . . . . . 27

V.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

I.   <u>Introduction</u>

Plaintiffs bring this purported class action against the City of Decatur (the "City") and Professional Probation Services ("PPS"), asserting claims arising out of the Municipal Court's use of PPS for probation services and the collection of fines and court costs from Municipal Court defendants. Plaintiffs primarily bring claims against the City pursuant to 42 U.S.C. § 1983, alleging in their Second Amended Complaint that the City had a policy, practice, or custom of revoking the probation of those receiving a sentence of fines and courts costs for failure to pay those fines and costs without a determination of their ability to pay. (See Doc. 41 ¶¶ 141-62).

The City previously moved for dismissal of these claims primarily on the grounds that any wrongdoing alleged in this action was not the result of a *municipal* policy or custom, but rather arose from the acts of the Decatur Municipal Court, a legally distinct entity. (See Doc. 28); (see also Doc. 47) (adopting and incorporating by reference Doc. 28 as to Second Amended Complaint). The Court denied the City's motion, appearing to conclude that the City's contract with PPS and the alleged acts of City police officers could subject the City to liability even if the officers acted pursuant to the directives of the Municipal Court. (See Doc. 75 at 16).

Shortly after this Court's decision, however, the Eleventh Circuit issued a ruling speaking directly on the extent to which municipalities in Alabama may be

held liable for conduct arising from the judicial acts of municipal courts. In McCullough v. Finley, 907 F.3d 1324 (11th Cir. 2018), the Eleventh Circuit held unequivocally that an Alabama municipal court's "probation procedure, indigency hearings, provision of counsel, [and] sentences" are all "judicial acts," and that allegations showing only a "chimerical" connection between judicial acts and municipal officials cannot suffice to hold the latter liable. See McCullough v. Finley, 907 F.3d 1324, 1331, 1335 (11th Cir. 2018). The Eleventh Circuit's ruling in McCullough changed the landscape for § 1983 claims arising out of municipal court operations in Alabama. As the district court recognized on remand in McCullough, the Eleventh Circuit's ruling means that an Alabama municipal court judge cannot be deemed a municipal policymaker when performing *judicial* acts of the type alleged in this case, and any arrests or other activity arising from those acts simply cannot state a claim for *municipal* liability. See McCullough v. City of Montgomery, Ala., Case No. 2:15-cv-464 (RCL), 2019 WL 211963, at *6-7 (M.D. Ala. May 14, 2019).

This change in controlling authority leaves no doubt that on the face of the Second Amended Complaint, Plaintiffs have failed to state a viable § 1983 claim against the City. Because Plaintiffs have premised their federal claims against the City on acts that, on their face, are attributable to the Decatur Municipal Court or other third parties, McCullough requires the dismissal of those claims. Accordingly,

2

the City is entitled to judgment on the pleadings as to all federal claims raised in Counts I, II, and III of the Second Amended Complaint, and the § 1983 claims raised therein are due to be dismissed.

## II.    Matters Alleged in the Complaint[1]

The Decatur Municipal Court is presided over by Judge Billy Cook. (Doc. 41 ¶ 28). The Municipal Court has jurisdiction over misdemeanors, traffic offenses, city code violations, and parking tickets within City limits. (Id. ¶ 32). The City's prosecutor was present in those cases, and would tell criminal defendants that they would be placed on probation. (Id. ¶ 33). However, it was the Municipal Court itself—not the City or its prosecutor—that assessed fines, court costs, and sentences to probation against criminal defendants in cases within its jurisdiction. (See id. ¶¶ 32, 39-40).

Among the sentencing options available to the Municipal Court is a sentence to probation, including but not limited to probation monitored and administered by PPS. (Id. ¶ 40). Probation sentences administered by PPS included monthly service fees in addition to other fines and court costs. (See id.). PPS warned probationers that

---

[1]Many of Plaintiffs' allegations are demonstrably false, as is made clear by the evidence attached to the City's motion for summary judgment filed contemporaneously herewith. However, for purposes of this Rule 12(c) motion only, the City takes as true the plausible factual allegations of the Second Amended Complaint.

warrants for their arrest would be issued if they missed appointments, and PPS would sometimes improperly extend the period for collecting fees. (Id. ¶¶ 42-43). If individuals were not able to timely pay PPS the fines or costs, PPS would notify the Municipal Court, and the Municipal Court would issue a warrant for the probationer's arrest or revocation of probation. (Id. ¶ 47).[2] According to Plaintiffs, "*PPS and the Decatur Municipal Court* [not the City] worked together to ensure the citizens of Decatur knew 'you pay or go to jail.'" (Id. ¶ 51).

Although Plaintiffs allege conclusory matters concerning municipal policy, custom, and practice (see id. at 24-25), the scope of their *factual* allegations concerning the City are exceedingly sparse. Although Plaintiffs allege that the City contracted with PPS (id. ¶ 8), the contract itself does not obligate the City to do anything other than designate PPS as a private entity to administer probation programs; in particular, the contract makes no mention of the use of City police officers in any capacity. (See Contract, **Exh. 1**).[3] Beyond that, Plaintiffs only allege

---

[2]At some points, Plaintiffs appear to suggest that *PPS* would issue arrest warrants. (See, e.g., id. ¶ 2). However, subsequent allegations make clear that this accusation is premised on PPS providing information to the Municipal Court, which would subsequently issue the warrant in question. (See, e.g., id. ¶¶ 47-48); (see also id. ¶ 71) (alleging that PPS "instructed the Decatur City Municipal Court to issue a warrant").

[3]Because Plaintiffs' Second Amended Complaint incorporates the City's contract with PPS by reference, and because that document is central to the claims submitted here, the Court may properly consider the contract on a Rule 12(c) motion. See, e.g., Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (permitting consideration of document at the pleadings stage where that

that the City's prosecutor was present in Municipal Court cases and spoke to criminal defendants (see Doc. 41 ¶ 33) and that City police officers were present and accessible at the PPS office (id. ¶ 44). Although Plaintiffs allege that the officers "*were used* to threaten and intimidate" probationers, they do not allege that the officers themselves threatened or intimidated anyone, and they do not explain *how* or *by whom* those officers "were used" to that end. (See id. ¶ 45).[4] At most, Plaintiffs allege that officers arrested individuals at the PPS office "many times" for having failed to pay court-imposed fines. (See id. ¶ 46). Plaintiffs' other allegations make clear that these arrests were pursuant to warrants issued by the Decatur Municipal Court. (See id. ¶¶ 47-48, 149-50); (see also, e.g., id. ¶¶ 71-72, 140) (arrests of individual Plaintiffs pursuant to warrants). Plaintiffs include no other *factual* allegations concerning conduct by City employees and mention no municipal policymaking officials.

## III.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to

---

document is undisputed and central to the plaintiff's claims).

[4]If anything, Plaintiffs appear to allege that it was *PPS*, and not the officers, that threatened and intimidated probationers. (See id. ¶¶ 58, 69, 192, 218; id. pp. 25, 27, 29).

5

delay trial. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001)). A motion for judgment on the pleadings is akin to a motion to dismiss, in that the Court must "accept as true all material facts alleged in the non-moving party's pleading, and [then] view those facts in the light most favorable to the non-moving party." See id.

In assessing the sufficiency of pleadings, the Court must use "a two-step framework." McCullough v. Finley [McCullough I], 907 F.3d 1324, 1333 (11th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-81 (2009)).

> First, we identify the allegations that are "no more than conclusions." Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief."

Id. (citing Iqbal, 556 U.S. at 679) (internal citations omitted). Under this standard, "legal conclusions 'must be supported by factual allegations,'" and any conclusory allegations lacking further factual enhancement must be discarded. See id. (citing Iqbal, 556 U.S. at 679).

6

IV.   <u>Argument</u>

A.   Judge Cook is Not a City Policymaker, and His Judicial Acts
    <u>Cannot Constitute City Policy</u>

Under 42 U.S.C. § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978). "[M]unicipal liability is limited to action for which *the municipality is actually responsible*." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986) (emphasis supplied). Therefore, Plaintiffs must establish, through the well-pled allegations of the Second Amended Complaint, that *the City* is actually responsible for the conduct and injuries that they allege. As <u>McCullough</u> and other recent cases make clear, their allegations of conduct stemming from *judicial actions* by the Decatur Municipal Court, or conduct by other actors, do not satisfy this burden.

"[I]t is when execution of a government's policy or custom, whether made ***by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy***, inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694 (emphasis supplied). Only an official policy or custom, enacted by a lawmaker or other policymaker, that is the "moving force" behind the constitutional violation may subject the municipality to liability. See <u>id.</u>;

7

see also, e.g., <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989); <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (noting that municipal liability arises only through "(1) an *officially promulgated* [municipal] policy or (2) an unofficial custom or practice of the [city] shown through the repeated *acts of a a final policymaker* for the [city].") (emphasis supplied). But "local governments can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." <u>Turquitt v. Jefferson County, Ala.</u>, 137 F.3d 1285, 1292 (11th Cir. 1998).

By contrast to *municipal* policy, the Alabama Constitution of 1901 expressly provides that "'[t]he *judicial* power of the state is vested exclusively in a unified judicial system' that includes 'such municipal courts as may be provided by law.'" <u>Ray v. Judicial Corrs. Servs., Inc.</u>, No. 2:12-cv-2819-RDP, 2017 WL 660842, at *9 (N.D. Ala. Feb. 17, 2017) (quoting Ala. Const. of 1901, Art. VI, § 139(a), and Ala. Code § 12-1-2) (emphasis supplied). In addition to vesting the Alabama Supreme Court with the power to "create procedural and administrative rules for municipal courts," see <u>id.</u>, the Alabama Unified Judicial System grants a variety of powers to municipal court judges, including the power to suspend sentences and place criminal defendants on probation, Ala. Code § 12-14-13(a), and to impose suitable conditions of probation, including requiring the probationer "[t]o pay the fine and costs imposed

8

or such portions thereof as the judge may determine and in such installments as the judge may direct," Ala. Code § 12-14-13(d)(7). See Ray, 2017 WL 660842, at *11. Moreover, municipal court judges must follow the Alabama Rules of Criminal Procedure, which provide additional requirements for (among other things) the judges' handling of courts costs or fines. See, e.g., Ala. R. Crim. P. 26.11. In other words, under Alabama law, there exists an entire realm of activities that are purely within the realm of a municipal court's *judicial acts*, and that are not in any way within the control of *municipal* policymakers. See, e.g., Ray, 2017 WL 66082, at *13 (citing Ala. Code § 12-14-13) ("[I]t is state law that provides the Municipal Court authority to impose probation on defendants, not [a] City's municipal code.").

In this vein, the Eleventh Circuit recently clarified that certain acts alleged by Plaintiffs can *never* be deemed to constitute municipal policy because those actions are purely judicial in function. See McCullough I, 907 F.3d at 1331-32. In McCullough, the plaintiffs alleged that two Alabama municipal court judges in Montgomery, Alabama, along with the mayor and police chiefs, helped to oversee "a modern day debtors' prison" where indigent offenders were forced to serve jail time when they could not pay fines and court costs to a private probation company. See id. at 1328-29. Specifically, the plaintiffs alleged that the judges, mayor, and chiefs "failed to provide meaningful hearings on indigency, alternatives to jailing, and

9

adequate access to counsel, . . . 'fail[ed] to advise' jailees of their rights," and "force[d] jailees to work to reduce their fines." See id. at 1329. The plaintiffs brought claims against the mayor and chiefs for these alleged conditions, and they also sought to assign liability to the municipal court judges for allegedly setting *municipal policy*. See id. The judges moved for dismissal on the basis of absolute judicial immunity, and the mayor and police chiefs argued that the complaint failed to state a claim against them. See id. at 1330. The district court denied those defendants' motions. Id.

The Eleventh Circuit reversed. As to the municipal court, after first examining the principles underlying judicial immunity, the Eleventh Circuit explained that immunity turned on "the nature and functions of the [judges'] alleged acts," an inquiry informed by four factors:

> (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers [or courtroom]; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

Id. (citing Dykes v. Hosemann, 776 F.2d 942, 946 (11th Cir. 1985) (en banc)).

Turning to the first factor in particular, the court acknowledged that certain acts—such as orders setting a blanket moratorium on filings during holidays—are administrative in nature and may not be subject to judicial immunity, in part because such acts are "not connected to any particular litigation" and "no direct appeal [i]s

10

available" from them. See id. at 1331-32 (citations omitted). The court went on to hold, however, that other acts "involv[ing] a normal judicial function," such as "**probation procedure**, **indigency hearings**, **provision of counsel**, **sentences**, and **work programs**[,] are all judicial acts":

> A probation order, and setting its terms, is "clearly" a judicial act. And a judge's duty to advise indigent defendants of their rights, even if done "in a way that makes a mockery of those rights," is a judicial act. The appointment of counsel, or failure to do so, is also a judicial act. And sentencing a defendant, including giving an opportunity to reduce a sentence, is a judicial act.

See id. at 1331 (internal citations omitted) (emphasis supplied). Thus, in McCullough, "the judges' alleged acts" concerning **probation, indigency, provision of counsel, and sentencing** were all "connected to particular litigation because each jailee was sentenced for a failure to pay fines within the context of an individual case" and "each jailee could have directly appealed the judges' acts concerning his probation, hearings, counsel, and sentence." See id. at 1332. As to the remaining three factors in the analysis, the court held that the context of the plaintiffs' claims—arising from hearings in the judges' courtrooms, and involving individualized orders and sentences for each criminal defendant—weighed strongly in favor of judicial immunity. See id.

The Eleventh Circuit also reversed the denial of the mayor and police chiefs' motion to dismiss. See id. at 1333-35. As the court observed, the plaintiffs had

alleged that the mayors and chiefs "adopted" and "administered" the probation arrangement with the municipal court and the private probation company. See id. at 1334. As part of these allegations, the plaintiffs had expressly argued that the mayor should be held liable because he signed the contract between the City and the company.[5] But the Eleventh Circuit, after discarding conclusory allegations, held that "the few factual allegations that remain do not state a plausible claim" against the mayors and chief. See id. at 1335 (citing, e.g., Iqbal, 556 U.S. at 681). Moreover, because the plaintiffs' factual allegations about the municipal court concerned judicial acts, those claims could not lead to the officials' liability because "any connection between the judicial acts and the mayor and chiefs is 'too chimerical to be maintained.'" See id. (quoting Iqbal, 556 U.S. at 681).

On remand, the district court in McCullough reviewed the Eleventh Circuit's holding and concluded that the appellate court had "foreclosed the possibility that the municipal judge acted as a *de facto* city official":

> [The] City does not have authority or control over the strictly judicial actions of its municipal court. ***Municipal courts in Alabama are a part of Alabama's unified judicial system.*** See Ala. Const. of 1901, Art. VI,

---

[5]See McCullough v. City of Montgomery, Ala., No.2:15-cv-463-RCL, Plaintiffs' Combined Response (Doc. 57), at 68 (N.D. Ala. Nov. 12, 2015) (citing Amended Complaint (McCullough Doc. 32) ¶ 30) ("Mayor Todd is also liable individually for his role in signing and overseeing the execution of the City's contracts with JCS."). Plaintiffs also expressly cited the mayor's signing of the contract in their briefing before the Eleventh Circuit. See Brief of Appellee, McCullough v. Finley, No. 17-11554 (11th Cir. Jan. 2, 2018), 2018 WL 346861, at *6 n.1.

§ 139(a) (stating that "the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of . . . such municipal courts as may be provided by law."); Ala. Code § 12-1-2 (same). And while state law grants cities some administrative responsibility for their municipal courts, see, e.g., Ala. Code § 12-14-12, **the Court has not been presented, nor has it found, any authority granting cities any influence or control over a municipal court judge's judicial actions.** Under Section 1983, "a local government 'must have power in an area in order to be held liable for an official's acts in that area.' " Turquitt[], 137 F.3d [at] 1292 [](quoting McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996)).

McCullough v. City of Montgomery, Ala. [McCullough II], 2019 WL 2112963, at *5-6 (M.D. Ala. May 14, 2019) (emphasis supplied). In other words, the Eleventh Circuit's holding meant that "***the municipal court judge is not a city official***" for purposes of the plaintiffs' § 1983 claims. See id. at *6.

The district court in McCullough II went on to find that the Eleventh Circuit had foreclosed *all* of the plaintiffs' § 1983 claims that are parallel to the claims asserted in this action. See id. at *6-7 (dismissing Counts III, IV, V, VI, and IX as to the city). In those claims, the plaintiffs had sought liability against the city under a Fourth Amendment claim concerning **arrests and arrest warrants**; a Due Process and Equal Protection claim for **imprisonment** of persons for non-payment of fines; and a Sixth Amendment claim concerning **indigency hearings**, **appointment of counsel**, and **imprisonment** after failing to hold such hearings or appoint counsel. See id. at *6. The plaintiffs had also asserted that the city was liable for Due Process,

13

Equal Protection, and Fourth Amendment claims concerning the **calculation of court fees**, specifically bail and bond schedules, without first **assessing indigency**. See id. at *7. As the district court held, *all* of these acts were either "activities explicitly held to be judicial acts" by the Eleventh Circuit or premised on "chimerical" allegations against the mayor and chiefs. See id. at *6-7 (citing McCullough I, 907 F.3d at 1331, 1335). Consequently, the plaintiffs had not shown—and could not show—that a "city official who speaks with final policymaking authority" was responsible for any wrongdoing, and the city could not be held liable for these § 1983 claims. See id.

The McCullough court was not writing on a blank slate when it reached this conclusion. Two years earlier, United States District Judge R. David Proctor similarly held in Ray v. Judicial Corrections Services, Inc., No. 2:12-cv-2819-RDP, 2017 WL 660842, at *9 (N.D. Ala. Feb. 17, 2017), that the City of Childersburg, Alabama was not responsible for similar "judicial acts" of the municipal court judge. As Judge Proctor observed, when one reviews the powers and responsibilities assigned to municipal court judges under the Unified Judicial System, "it follows as a matter of law and logic that [a] Municipal Court's judge act[s] as a *state* policymaker," and not a *municipal* policymaker, "when sentencing Plaintiffs to probation, setting terms of probation, designating JCS [a private company] as the probation agency, and

14

revoking or reinstating probation." See id. at *13 (emphasis supplied). Thus, under similar facts, Judge Proctor held that the city itself

> did **not** impose unconstitutional terms and conditions of probation, unconstitutionally imprison probationers without an indigency determination or access to counsel, unlawfully impose fees and probation terms beyond the statutory maximums available, or unconstitutionally treat defendants disparately based on their wealth. **Those [alleged] actions were committed** either **by the Municipal Court** or by JCS employees after JCS had been assigned to supervise Plaintiffs' probation.

See id. at 12 (emphasis supplied).

In the years since Judge Proctor's opinion in Ray, and following the Eleventh Circuit's decision in McCullough I, similar claims against Alabama municipalities have been rejected under the reasoning of those decisions. See, e.g., Woods v. Judicial Corr. Servs., Inc., No. 2:15-cv-493-RDP, 2019 WL 2372236, at *7-10 (N.D. Ala. June 5, 2019) (rejecting **Due Process, Equal Protection, Fourth Amendment, and Sixth Amendment claims** because, "under binding precedent, the City simply cannot be liable under § 1983 for actions taken by the municipal court"); Hunter v. Etowah Cnty. Ct. Referral Program, LLC, 309 F. Supp. 3d 1154, 1185-87 (N.D. Ala. 2018) (citing, e.g., Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992), and Ray, 2017 WL 660842, at *13) (holding that "the City cannot be held liable under § 1983 based

15

upon the [Attalla Municipal Court]'s judicial conduct" and that, as a matter of law, the municipal court was not a policymaker for the city).

In short, the indisputable rule in the Eleventh Circuit is that an Alabama municipality can *never* be held liable for the issuance of warrants, indigency hearings (or lack thereof), provision of counsel (or lack thereof), sentences, calculations of court costs and fees, probation procedures, the designation of a private company to handle probation, imprisonment for non-payment of court-imposed fines, and other *judicial acts* performed by a municipal court judge, or acts arising therefrom. See McCullough II, 2019 WL 2112969, at *5-7 (citing, e.g., McCullough I, 907 F.3d at 1331-32); Ray, 2017 WL 660842, at *12-13; see also Woods, 2019 WL 2372236, at *7-10; Hunter, 309 F. Supp. 3d at 1185-87. It follows, then, that Plaintiffs' claims in Counts I through III must be dismissed in full.

B.   Plaintiff's Sixth Amendment Claim is Premised Entirely on Judicial Acts and, Therefore, Must Be Dismissed

Although McCullough I and other recent authorities compel dismissal of *all* of Plaintiffs' § 1983 claims, nowhere is this more apparent than with the Sixth Amendment claim presented in Count III of the Second Amended Complaint. That claim is premised on two allegations: (1) that the Decatur Municipal Court "calculated Plaintiffs['] jail **sentences** based on a formula that took into account the

16

money owed in fines and costs"; and (2) that the Decatur Municipal Court **sentenced** them to jail, **assessed** "fines and costs," and/or actually **jailed** them without first "informing them of their right to counsel, appointing counsel on their behalf, or obtaining a knowing, intelligent and voluntary waiver of counsel." (See Doc. 41 ¶¶ 158-60); (see also id. ¶¶ 32, 36-41) (specifying that it is the *Decatur Municipal Court*, and not the City, taking these actions during court proceedings). As the Eleventh Circuit has recognized, these are unambiguously *judicial acts*. See McCullough I, 907 F.3d at 1331 (finding that "indigency hearings, provision of counsel, [and] sentences . . . are all judicial acts"); see also McCullough II, 2019 WL 2112963, at *6-7 (citing McCullough I, 907 F.3d at 1331) (observing that the Eleventh Circuit "expressly held" that "failure to appoint adequate counsel before imprisonment for inability to pay debts," and/or the assessment of fines or fees in the absence of indigency hearings, are judicial acts).

The factual paragraphs of the Second Amended Complaint drive home the judicial nature of these acts. Plaintiffs openly concede that it is the *Municipal Court* that has jurisdiction over the cases at issue here (see id. ¶ 32); that it is "the *[M]unicipal [C]ourt* that appoints lawyers to defend individuals" (id. ¶ 30); that it is "*[t]he Decatur Municipal Judge*" who bears the responsibility to inform persons of their rights in these hearings (see id. ¶ 38); and that it is the *Municipal Court* that

sentences criminal defendants in these proceedings (see id. ¶¶ 36, 38-39). As in McCullough, these are actions taken by a municipal judge, in a courtroom, in an individualized fashion (and thus subject to individualized appeal), in the course of criminal proceedings over which the Municipal Court presides. See 907 F.3d at 1331-32. And as in McCullough, Plaintiffs have included no factual allegations that any *City* official "presided over any proceedings in which they could have informed a defendant of his rights, appointed counsel, or considered alternative sentences," or "sentence[d] jailees to sit-out their fines." See id. at 1335. Consequently, each of the alleged acts underlying Count III is "clearly a judicial act over which the City lacks control." See McCullough II, 2019 WL 2112963, at *6.

Plaintiffs appear to contend at times that the City is somehow responsible for the Municipal Court's performance of these traditional judicial acts. (See Doc. 40 ¶¶ 158-60). This argument is apparently premised on Plaintiffs' allegations that the City "operates [the] municipal court" (id. ¶ 26) and that the Municipal Judge is the City's "agent[]" (id. ¶ 53). But that position is incorrect:

> In light of Alabama's delegation of judicial authority to the state judicial system, it follows *as a matter of law and logic* that [a] Municipal Court's judge act[s] as a *state policymaker* when sentencing Plaintiffs to probation, setting terms of probation, designating [a company] as the probation agency, and revoking or reinstating probation. This state's supreme law, the Alabama Constitution, designates municipal courts as *courts under the unified judicial system*. The Alabama Supreme Court,

18

a *state* agency, held the authority to create procedural and administrative rules that regulated the Municipal Court. And it is *state law* that provides the Municipal Court authority to impose probation on defendants, not [a] City's municipal code. Finally, a *state court*—the Court of the Judiciary—is responsible for sanctioning a municipal court's judge for misconduct or ethical violations. Although the City paid [a municipal judge's] salary, that fact alone [does] not grant the City control over him. *Because the Municipal Court's judge was a member of the state's judicial system, implemented state law when issuing and supervising probation sentences, and was subject to the disciplinary control of a state agency, the court finds that he acted as a state policymaker, not a municipal policymaker, when implementing the probation policies at issue in this case.*

Ray, 2017 WL 660842, at *13 (internal citations omitted) (emphasis supplied); see also, e.g., McCullough I, 907 F.3d at 1331 (recognizing as a matter of law that these acts are judicial in nature) McCullough II, 2019 WL 2112963, at *6-7 (same). Plaintiffs' legal conclusion that the City is somehow responsible for these acts is unsupported and, therefore, must be disregarded. See McCullough I, 907 F.3d at 1333 (citing Iqbal, 556 U.S. at 679).

Plaintiffs' Sixth Amendment claims concern entirely judicial acts performed not by the City, but by the Decatur Municipal Court. There is no authority to the contrary. Consequently, the City cannot be held liable for *any* violations arising from those acts, and Count III is due to be dismissed in full.

19

C.    Count II Must Be Dismissed Because the Issuance of Warrants is
      a Judicial Act for Which the City May Not Be Held Liable

Plaintiffs' Fourth Amendment claim against the City is equally untenable. The

allegations of the Second Amended Complaint make clear that Plaintiffs' claim is

premised on arrests made pursuant to warrants (see Doc. 41 ¶¶ 149-50) and that these

warrants are issued by the Decatur Municipal Court after PPS allegedly provides

information to that Municipal Court concerning probationers (see id. ¶¶ 47-48).[6] Once

again, McCullough is instructive:

> Count [II] relates primarily to **the issuance of warrants—clearly a
> judicial act over which the City lacks control**. And once the judge is
> eliminated as a possible final policymaker, *there are no allegations
> allowing the Court to draw an inference that there is some other city
> official who speaks with final policymaking authority for the issuance
> of warrants.* See Grech, 335 F.3d at 1330. In other words, the plaintiffs
> fail to plausibly allege that the City is actually responsible for the
> alleged illegal issuance of warrants.

McCullough II, 2019 WL 2112963, at *6 (emphasis supplied). Here, Plaintiffs openly

acknowledge that the Municipal Court issues warrants, and they allege no *facts*

showing that the City plays any role in that process. Accordingly, to the extent that

Count II targets the issuance of warrants (Doc. 41 ¶ 150), which is plainly a judicial

act over which the City has no control, that claim dismissal is required. See

---

[6]Plaintiffs do not allege that City officers improperly *procure* these arrest warrants, or even
that City officials procure them at all. Rather, Plaintiffs challenge the *issuance* of the warrants. (See,
e.g., Doc. 41 ¶ 150) (complaining about warrants being "issue[d]"); (cf., id. ¶ 166) (same).

McCullough II, 2019 WL 2112963, at *6; cf. Ray, 2017 WL 660842, at *14 (citing Woodard v. Town of Oakman, 885 F. Supp. 2d 1216, 1232 (N.D. Ala. 2012) ("[L]ike a municipal court judge, a municipal court magistrate is not a policymaker for the City when conducting *judicial acts, such as issuing a warrant.*") (emphasis supplied).

To the extent that Count II targets *incarceration* pursuant to those warrants, that claim is equally invalid. Claims of incarceration pursuant to legal process, such as the warrants discussed in the pleading, are properly construed as Fourth Amendment malicious prosecution claims. See, e.g., Carter v. Gore, 557 F. App'x 904, 906 (11th Cir. 2014) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). However, such a claim necessarily requires, among other things, a showing that the plaintiff's prosecution terminated in his or her favor. See, e.g., Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010); Fulford v. Fannin, No. 1:17-cv-703-VEH-SGC (2018 WL 914046, at *9 (N.D. Ala. Jan. 22, 2018) ("A § 1983 malicious prosecution claim requires a seizure in violation of the Fourth Amendment, as well as: (1) criminal prosecution by the defendant (2) with malice and without probable cause (3) that terminated in the plaintiff's favor and (4) caused damages to the plaintiff."), *R&R adopted*, 2018 WL 905349 (N.D. Ala. Feb. 15, 2018). Plaintiffs do not allege that *any* probation revocation proceedings or other proceedings concerning their alleged failure to pay court fines and costs ever terminated in their

21

favor. Thus, as far as Count II is premised on Plaintiffs' incarceration, that claim must be dismissed. See, e.g., Ray v. Judicial Corr. Servs., Inc., 270 F. Supp. 3d 1262, 1307 (N.D. Ala. 2017) (granting summary judgment on similar claims where plaintiffs did not establish termination of proceedings in their favor).

The City also may not be held liable for *arrests* by City police officers premised on warrants issued by the Municipal Court. Judge Proctor addressed this very situation in Ray, and his reasoning applies with equal force to this claim:

> [T]his particular Section 1983 challenge is directed at law enforcement officers' executions of court-issued arrest warrants. Therefore, it runs into two insuperable obstacles.
>
> The first obstacle is that the City's police officers are entitled to absolute quasi-judicial immunity for executing facially valid court orders. Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). An order can be facially valid even if it contains a legal error. Id. at 556. Specifically, an officer is entitled to quasi-judicial immunity for executing a court order if it is facially fair, it was issued by a court with jurisdiction over the parties and the subject matter of the suit, and it was issued in the regular course of judicial proceedings. Id. *Here, Plaintiffs have not indicated . . . that the arrest warrants for FTOCO were facially invalid*, nor have they questioned the Municipal Court's subject matter jurisdiction to issue arrest warrants. . . . *[A] City police officer was not (and is not) empowered to question the validity of a conviction referenced in a Municipal Court arrest warrant when he or she had no involvement in procuring the arrest warrant.* As the former Fifth Circuit stated, the law does not require a police officer to choose between a charge of dereliction of duty for failing to effectuate an arrest warrant and Section 1983 liability for acting on the warrant. Turner v. Raynes, 611 F.2d 92, 93 (5th Cir. 1980) (quoting Pierson v. Ray, 386 U.S. 547, 555 (1967)). Therefore, it is unlikely that Plaintiffs could maintain Section 1983

22

claims against individual City police officers for executing facially valid arrest warrants based on an offense that did not exist.

The second obstacle—and the more consequential one here—is that **Plaintiffs have not identified the final decisionmaker for the City who was responsible for issuing a policy or custom directing officers to arrest probationers based on invalid FTOCO charges.** If Plaintiffs' Section 1983 claims concerning these arrests are based solely on the officers' arrests, then *the City cannot be held liable under Section 1983 on a respondeat superior basis for the conduct of employees who lacked final decisionmaking authority.* Monell, 436 U.S. at 690. Moreover, if these Section 1983 claims are based on the adoption of the [agency] Contract, then Plaintiffs have not demonstrated that [this] Contract itself contained any policy or custom regarding the duties of the City's police. Simply put, the court cannot discern. . . any policy or custom by the City to have its police department effectuate a "collection practice" by arresting probationers based on warrants purportedly predicated on FTOCO charges.

See Ray, 2017 WL 660842, at *14-15 (internal citations omitted) (emphasis supplied).

Here, the Second Amended Complaint alleges only that after the Decatur Municipal Court sentenced Plaintiffs to pay court-imposed fines and fees through PPS, the Municipal Court would, in the course of regular judicial proceedings in cases over which it had jurisdiction, issue warrants for their arrest when they failed to pay those fines and fees.[7] But as McCullough I now makes clear, Plaintiffs'

---

[7](See, e.g., Doc. 41 ¶ 42) (PPS warnings that warrants would be issued for missed appointments), (id. ¶ 47) ("PPS would provide information *to the Decatur Municipal Court* for a warrant to issue") (emphasis supplied); (id. ¶¶ 149-50) (discussing arrests and issuance of warrants).

sentences and assignments to probation with PPS were *judicial* acts, and Plaintiffs do not allege any facts showing that subsequent warrants relating to these matters were facially invalid. The Decatur Municipal Court was solely responsible for the judicial acts of sentencing and issuing warrants, and Plaintiffs cannot show (and have not plausibly alleged) the involvement of any *City* official in any policy or custom pertaining to Plaintiffs' allegedly improper arrests resulting from those warrants or otherwise. See, e.g., Iqbal, 556 U.S. at 678 (requiring courts to reject "'naked assertion[s]' devoid of 'further factual enhancement'"); see also, e.g., McCullough I, 907 F.3d at 1335 (rejecting allegations of municipal officials' liability for judicial acts); Woods, 2019 WL 2372236, at *7-10 (granting summary judgment in city's favor as to federal claims, including Fourth Amendment claim concerning similar allegations[8]); McCullough II, 2019 WL 2112963, at *6 (recognizing the Eleventh Circuit's "guidance that the municipal court judge is not a city official" with municipal policymaking authority); Ray, 2017 WL 660842, at *15 (dismissing claims because, once allegations that the municipal court judge was a city official were properly disregarded, "Plaintiffs have not identified [a] final decisionmaker for the

---

[8]See Woods, 2:15-cv-493-RDP, Doc. 143 ¶¶ 222-32 (N.D. Ala. July 10, 2018).

City" concerning the arrests individuals for failure to pay court-imposed fines and fees).[9] These facts require dismissal of Plaintiffs' Fourth Amendment claim.

Plaintiffs' allegations concerning the City's contract with PPS do not change this conclusion. As McCullough I makes clear, when a plaintiff alleges *municipal* wrongdoing, that plaintiff must allege sufficient factual enhancement supporting an inference of *municipal* liability. See McCullough I, 907 F.3d at 1335 (dismissing claims against municipal officials "concern[ing] judicial acts" where "any connection between the judicial acts and [the municipal officials] is 'too chimerical to be maintained'"). Here, the contract between the City and PPS makes *no reference whatsoever* to any power or duty of Decatur police officers and *no reference whatsoever* to any municipal arrest powers. (See Exh. 1). With respect to Plaintiffs' Fourth Amendment claim, the contract between the City and PPS creates no municipal policy and is entirely irrelevant.

In Ray, Judge Proctor similarly rejected a plaintiffs' attempts to establish "an especially broad" municipal policy by reference to the City of Childersburg's contract with a private probation company. See Ray, 2017 WL 660842 at *9. First, Judge

---

[9]To the extent that this Court has held otherwise prior to the Eleventh Circuit's guidance in McCullough I (see Doc. 75 at 16) (concluding that the City's police department "act[s] pursuant to municipal policy"), that decision now forecloses the possibility that the City may be held liable for arrests by its police officers premised on facially valid warrants and/or any other directive by the Decatur Municipal Court. See, e.g., McCullough II, 2019 WL 2112963, at *6 (citing McCullough I, 907 F.3d at 1331, and Grech, 335 F.3d at 1330).

Proctor dismissed the plaintiffs' argument that the contract in question could "handcuff[] the autonomy of the municipal court," since under Alabama law, "**[the contract] did not (and could not) obligate [the municipal court]** to set certain terms of probation," such as the sentencing of a defendant to probation managed by a private company. See id. at *12 (emphasis supplied); see also id. at *16 ("Nothing in the JCS-City Contract required the Municipal Court to sentence certain defendants to probation. Nor did the JCS-City Contract prevent the Municipal Court from holding indigency hearings or directing JCS to supervise a probationer without charging fees."). Second, the plaintiffs had failed to establish "that the [probation] Contract itself contained any policy or custom regarding the duties of the City's police." See id. at *15. Finally, the plaintiffs could not recover from the city for conduct by the private company on a principal-agent theory under § 1983, as such an outcome would impermissibly impose *respondeat superior* liability on the city. See id. at *15-16 (citing Evans v. City of Talladega, 136 F. Supp. 3d 1354, 1362 (N.D. Ala. 2015)). Therefore, the plaintiffs could not show that the contract either amounted to relevant municipal policy or was the proximate cause of any injury. See id.

There is simply no functional difference between the evidence barring the plaintiffs' claims in Ray and the "chimerical" connection between Plaintiffs' Fourth Amendment claims and the City's contract with PPS. See McCullough I, 907 F.3d at

26

1335. Here, as in <u>Ray</u>, the City cannot be held liable for the acts of PPS or its employees on a principal-agent or *respondeat superior* theory. See <u>Ray</u>, 2017 WL 660842, at \*16 (citing <u>Evans</u>, 136 F. Supp. 3d at 1362). As in <u>Ray</u>, the contract itself does not set forth municipal policy and creates no duties or responsibilities on behalf of the City's police. See <u>id</u>. at \*15. As in <u>Ray</u>, the contract is not signed by the Decatur Municipal Court and, as a matter of law, could not bind the Municipal Court to appoint PPS as the probation service for every defendant—the Municipal Court was not a signatory to that contract, and as legally distinct entities, the City could not itself bind the Municipal Court in any manner. See <u>id</u>. at 12. Instead, the Second Amended Complaint makes clear that Plaintiffs' claim arises entirely from acts over which the City and its police had no authority. See <u>id</u>. at \*15; see also <u>McCullough</u>, 907 F.3d at 1334-35. In the absence of further factual enhancement, Plaintiffs' claim against the City in Count II must be dismissed.

D.   <u>Plaintiffs' Fourteenth Amendment Claims Are Not Tenable</u>

The Eleventh Circuit's recent guidance in <u>McCullough</u> also requires dismissal of Plaintiff's Due Process and Equal Protection claims in Count I. As this Court has recognized, the crux of these claims is that the City violated their Fourteenth Amendment rights when its police officers allegedly caused Plaintiffs to be "threatened, harassed, intimidated and jailed because of their inability to pay [court]

27

fines and costs" and "jail[ed] those who [were] unable to pay fees and fines to the

Defendant PPS." (Doc. 41 ¶¶ 142-45); (see also Doc. 75 at 15-16) (describing the

scope of the City's purported wrongful conduct).

As an initial matter, Plaintiffs' allegation that City officials improperly arrested

and jailed them are not cognizable under the Fourteenth Amendment. Rather, such

claims may only be brought under the Fourth Amendment. See, e.g., Albright v.

Oliver, 510 U.S. 266, 274 (1994) (plurality) (finding that a claim regarding improper

arrest must be brought under the Fourth Amendment, not the Fourteenth

Amendment); see also, e.g., Jordan v. Mosley, 298 F. App'x 803, 805-06 (11th Cir.

2008) (citing, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (observing that

claims premised on conduct covered by the "textual source" of a specific amendment

must be analyzed under that amendment, and holding that allegations "flow[ing]"

from plaintiff's arrest "should be analyzed under the Fourth Amendment" rather than

the Fourteenth Amendment). Because Plaintiffs' allegations concerning their arrest

and subsequent jailing are subsumed in their Fourth Amendment claim in Count II,

their Fourteenth Amendment claim must be narrowed accordingly.

More to the point, the principal problem with this theory of liability is that the

McCullough court has now expressly recognized that Fourteenth Amendment claims

cannot be premised on a city's alleged efforts to threaten or imprison individuals in

the course of enforcing a court's judicial acts. In Count V of the <u>McCullough</u> complaint, the plaintiffs pursued a theory of municipal liability based on allegations that the city adopted policies

> of commuting fines and costs and *jailing* [the plaintiffs] as a means of punishing them or coercing the payment of fines, costs and other debts owed to the City, and of *harassing and threatening to jail them*, all without conducting meaningful inquiries into their indigency or ability to pay and without conducting inquiries into alternatives to imprisonment as required by the due process and equal protection clauses of the United States Constitution.

<u>McCullough</u>, 2:15-cv-463-RCL, Doc. 32 ¶ 206 (N.D. Ala. Aug. 20, 2015). But following the Eleventh Circuit's decision in that case, the district court held that this Fourteenth Amendment claim for "imprisonment of indigent persons for non-payment of fines" plainly concerns *judicial acts*, and therefore was not viable against the city. <u>McCullough II</u>, 2019 WL 2112963, at *6 (citing <u>McCullough I</u>, 907 F.3d at 1331).

The Fourteenth Amendment claim in Count V of <u>McCullough</u>—founded on allegations that the municipality "theaten[ed]," "harass[ed]," and "jail[ed]" individuals for failure to pay fees and fines imposed by a municipal court (see Doc. 41 ¶¶ 141-47)—is indistinguishable from Plaintiffs' claim that the City, through its officers, "threatened, harassed, intimidated and incarcerated" them on the same basis. (See Doc. 41 ¶ 145). As previously noted, the contract between the City and PPS "did not (and could not)" require the Municipal Court to sentence defendants to probation

with PPS or imprison defendants for failure to pay court-imposed fines and fees. See Ray, 2017 WL 660842, at *12. And as in McCullough, there are simply no factual paragraphs supporting the conclusory allegation that the City "implemented and followed" any policy along these lines. (See Doc. 41 at 24-25); see also McCullough I, 907 F.3d at 1334 (citing Iqbal, 907 F.3d at 1334) (finding that allegations of this nature, "without more, are 'not entitled to be assumed true'"); Ray, 2017 WL 660842, at *14-17. The Eleventh Circuit's decision in McCullough leaves no grounds for finding municipal liability on the basis of these allegations.

## V.   Conclusion

Plaintiffs federal claims against the City cannot survive the Eleventh Circuit's decision in McCullough, There are no *factual* allegations in the Second Amended Complaint describing wrongful conduct by any City policymaker or otherwise plausibly showing the existence of any municipal policy or custom. To the contrary, *every single injury* that Plaintiffs attribute to the City arose from acts for which the City can have no liability. See, e.g., McCullough I, 907 F.3d at 1331-35; McCullough II, 2019 WL 2112969, at *5-7; Ray, 2017 WL 660842, at *12-17. Because Plaintiffs' well-plead factual allegations do not show otherwise, judgment on the pleadings is required. Therefore, the City's motion is due to be granted, and Counts I, II, and III of the Second Amended Complaint must be dismissed.

s/ George W. Royer, Jr.
George W. Royer, Jr.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: gwr@LanierFord.com; djc@LanierFord.com; jbe@LanierFord.com

Attorneys for Defendant City of Decatur, Alabama

31

<u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Byron R Perkins
PERKINS LAW
The Civic Center Medical Forum Building
950 22nd Street North, Ste. 550
Birmingham, AL 35203
205-558-4696
Fax: 205-759-3669
bperkins@perkins-law.com

Terrinell Lyons
LYONS LAW FIRM, INC.
612 South Court Street
Florence, AL 35630
256-768-0340
Fax: 256-768-0346
terrinelllyons@aol.com

Lee David Winston
WINSTON COOKS
505 20th Street North Suite 815
Birmingham, AL 35203
205-502-0940
Fax: 205-278-5876
lwinston@winstoncooks.com

Roderick T Cooks
WINSTON COOKS LLC
Two 20th Street North, Suite 1330
Birmingham, AL 35203
205-502-0970
Fax: 205-278-5876
rcooks@winstoncooks.com

Robert L. Wiggins, Jr.
WIGGINS, CHILDS, QUINN & PANTAZIS LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
rwiggins@wcqp.com

Stephen E Whitehead
Devon Kehres Rankin
LLOYD GRAY WHITEHEAD & MONROE PC
2501 20th Place South, Suite 300
Birmingham, AL 35223
205-967-8822
Fax: 205-402-4085
steve@lgwmlaw.com
drankin@lgwmlaw.com

32

Bryan A Grayson
LLOYD, GRAY, WHITEHEAD
& MONROE, PC
880 Montclair Road, Ste. 100
Birmingham, AL 35213
205-967-8822
Fax: 205-967-2380
bgrayson@lgwmlaw.com


on this the 9th day of December, 2019.

s/ David J. Canupp

David J. Canupp