FILED
2020 Feb-14  PM 04:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SAMANTHA MALONE, et al.,     )

       )

     Plaintiffs,     )

       )

v.     )     CASE NO. 5:16-cv-00483-LCB

       )

CITY OF DECATUR, ALABAMA,     )

et al.,     )

       )

     Defendants.     )

---

## OPPOSITION TO PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

---

George W. Royer, Jr.
David J. Canupp
J. Bradley Emmons
LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
Huntsville, AL 35804

*Attorneys for Defendant City of Decatur, Alabama*

# **TABLE OF CONTENTS**

I.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   Class Certification Must Be Denied Because Plaintiffs Lack
        Standing to Pursue Their Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        i.    Certification as to Plaintiffs' Federal § 1983 Claims Must
            Be Denied Because the Named Plaintiffs Suffered No
            Constitutional Deprivations During the Relevant
            Limitations Period. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        ii.   Certification as to Plaintiffs' State-Law Claim Must Be
            Denied Because the Named Plaintiffs Failed to Satisfy
            Mandatory Statutory Prerequisites to That Claim. . . . . . . . . . 10

    B.   Class Certification Must Be Denied Because Plaintiffs' Proposed
        Class is Not Adequately Defined or Clearly Ascertainable. . . . . . . . 11

        i.    Plaintiffs' Proposed Class is Not Adequately Defined. . . . . . 11

        ii.   Plaintiffs' Proposed Class is Not Clearly Ascertainable. . . . 14

    C.   Class Certification Must Be Denied Because Plaintiffs Have Not
        Established Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    D.   Class Certification Must Be Denied Because Plaintiffs Cannot
        Establish Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    E.   Class Certification Must Be Denied Because Plaintiffs' Claims
        Are Not Typical of Class Claims. . . . . . . . . . . . . . . . . . . . . . . . . . 25

    F.   Because Plaintiffs Do Not Seek Injunctive or Declaratory Relief
        At All, Certification Under Rule 23(b)(2) Must Be Denied. . . . . . 27

i

G.  Certification Under Rule 23(b)(3) Must Be Denied Because Plaintiffs Have Failed to Show That Common Questions Predominate Over Individualized Inquiries. . . . . . . . . . . . . . . . . . . 30

  i.  Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

  ii.  Monthly Monitoring Fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

  iii.  Count I (Fourteenth Amendment). . . . . . . . . . . . . . . . . . . . . 37

  iv.  Count II (Fourth Amendment). . . . . . . . . . . . . . . . . . . . . . . 40

  v.  Count III (Sixth Amendment). . . . . . . . . . . . . . . . . . . . . . . . 42

  vi.  Count IV (False Imprisonment). . . . . . . . . . . . . . . . . . . . . . . 43

H.  Certification Under Rule 23(b)(3) Must Be Denied Because Class-Wide Adjudication is Not Superior to Other Alternatives.. . . 45

IV.  Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

## I.   <u>Introduction</u>

Plaintiffs' Second Amended Complaint ("SAC") asserts four claims against the City: (1) a Fourteenth Amendment claim alleging that Plaintiffs were "threatened, harassed, intimidated and jailed because of their inability to pay" fines and fees to which probationers were sentenced by the Decatur Municipal Court; (2) a Fourth Amendment claim alleging arrest without probable cause for an inability to pay those fines and fees; (3) a Sixth Amendment claim essentially alleging a failure to appoint counsel; and (4) a state-law false arrest claim. (Doc. 41 ¶¶ 4, 141-68). The City has a motion for summary judgment pending as to the named Plaintiffs that, if granted, would moot their certification motion as to each of these claims. (See Doc. 108).

Nonetheless, Plaintiffs seek certification on their claims for a class defined as:

> All persons who, at any time from 2ⁿᵈ Day of May 2004 to December 31, 2015, (1) incurred court-imposed financial obligations arising from a traffic or misdemeanor case in City of De[c]atur Municipal Court; and (2) were supervised on probation in that case by Professional Probation Services ["PPS"].

(Doc. 114 at 3, 31); (see also Doc. 112).

Even at first blush, Plaintiffs' class definition raises red flags. If this case is about probationers who were allegedly arrested and jailed, why does the proposed class encompass *everyone* who was placed on probation and assessed fines by the Decatur Municipal Court, regardless of whether they were later arrested or jailed? And since the bulk of Plaintiffs' claims are asserted under 42 U.S.C. § 1983, which

has a well-known two-year statute of limitations, how can a class involving *over eleven years* of probationers possibly satisfy the demands of Article III standing?

A reader scouring Plaintiffs' brief for answers to these questions, or for any other indication that certification is proper under the requisite standards, will come up empty-handed. Plaintiffs fail to show that their class is adequately defined, and they do not so much as suggest that class members can be clearly ascertained by reference to any objective criteria as the Eleventh Circuit requires. Plaintiffs do not (and indeed *cannot*) establish their standing to assert these claims on behalf of the proposed class, which in turn means that their claims are not typical of the class. Plaintiffs' evidence of numerosity is wholly premised on an unsworn, unexplained list of people who almost certainly lack their own standing to assert these claims. And although precedent requires Plaintiffs to identify "common questions" that are "central to the validity of [their] claims," see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 338, 350 (2011), Plaintiffs instead repeatedly point to a monitoring fee that is not even a basis for any claims in this lawsuit, and that is permissible under state law in any event.

Perhaps most importantly, Plaintiffs fail to meaningfully distinguish this action from caselaw showing that the individual questions raised by these precise types of claims completely predominate over any common issues. See Ray v. Judicial Corr. Servs., Inc., ___ F.R.D. ___, 2019 WL 4689214, at *18-23 (N.D. Ala. 2019). Rather

than being an ideal candidate for class-wide adjudication, this case presents claims that by their very nature will require extensive analysis, on a class-member-by-class-member basis, of individualized issues *including but not limited to*: whether the putative member was ever threatened or arrested by City officials; whether those threats or arrests were on the basis of a failure to pay court-imposed fines or fees; whether any arrest was otherwise supported by probable cause; whether the member's failure to pay was willful; whether the failure to pay was based on actual indigency; whether the member was actually incarcerated for his failure to pay; whether the member was afforded a hearing before being jailed; whether the member was provided counsel at that hearing; whether indigency was addressed at any such hearing; whether the facts of any hearing amounted to a constitutional violation; the quantum of damages for any of these alleged violations; and whether these purported violations accrued within the statute of limitations.

Plaintiffs' motion to certify fails to address necessary arguments, fails to find any support in the record, and ultimately fails to establish, by a preponderance of the evidence, that certification is appropriate. Their motion must be denied.

## II.   <u>Legal Standard</u>

"All else being equal, **the presumption is against class certification** because class actions are an exception to our constitutional tradition of individual litigation." See <u>Ray v. Judicial Corr. Servs., Inc.</u>, ___ F.R.D. ___, 2019 WL 4689214, at *10

(N.D. Ala. 2019) (quoting Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233 (11th Cir. 2016)) (emphasis supplied). Accordingly, the Court "must undertake a '**rigorous** analysis' of the elements of Rule 23(a) and (b)" before certifying a class. Id. (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 35 (2013)) (emphasis supplied).

Given the presumption against certification, the plaintiff bears the burden, by the preponderance of the evidence, to establish that certification is appropriate. See, e.g., Ray, 2019 WL 4689214, at *10 (citing Brown, 817 F.3d at 1233); Shuford v. Conway, 326 F.R.D. 321, 328 (N.D. Ga. 2018); Local 703 v. Regions Fin. Corp., 282 F.R.D. 607, 611 (N.D. Ala. 2012) (citation omitted), *aff'd in relevant part*, 762 F.3d 1248 (11th Cir. 2014); In re HealthSouth Corp. Sec. Litig., 257 F.R.D. 260, 272 (N.D. Ala. 2009) (numerous authorities omitted); see also, e.g., Karhu v. Vital Pharms., Inc., 621 F. App'x 945, 946 (11th Cir. 2015) (quotation omitted) (describing burdens); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003) (same). The plaintiff must meet this burden as to *every* element of the class-certification analysis. See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009) (citing Valley Drug, 350 F.3d at 1187).

Because Plaintiffs bear "a burden of *proof*, not a burden of pleading," the Court may not simply accept the allegations of the SAC as true. See Brown, 817 F.3d at 1234 (citation omitted)). As the Supreme Court has observed,

4

Rule 23 does not set forth a mere pleading standard. A party seeking class certification must **affirmatively demonstrate** his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.

Wal-Mart v. Dukes, 564 U.S. 338, 350 (2011) (bold emphasis supplied). Thus, "if a question of fact or law is relevant to [the certification] determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." Brown, 817 F.3d at 1234 (citation omitted).

Rule 23 of the Federal Rules of Civil Procedure lays down the ground rules for certifying a class action. To win certification under Rule 23, **every class must present a named plaintiff who has standing to bring the claim**. See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000). **Every class must be "adequately defined and clearly ascertainable."** Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). **And every class must satisfy the four requirements of Rule 23(a)**: numerosity, commonality, typicality, and adequacy of representation. Id.

From there, the rules differ depending on what type of class the plaintiff purports to represent. For an injunction class under Rule 23(b)(2), the plaintiff must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For a damages class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because these rules establish different threshold certification requirements and different procedural safeguards—protective of both defendants and absent class members—it is important that courts insist on the proper treatment of different types of classes. Injunction classes can go forward under Rule 23(b)(2);

damages classes must satisfy Rule 23(b)(3). See <u>Wal-Mart Stores, Inc.</u> <u>v. Dukes</u>, 564 U.S. 338, 361-63[] (2011).

<u>AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.</u>, 938 F.3d 1170, 1174 (11th Cir. 2019) (emphasis supplied).

### III.   <u>Argument</u>

A.   Class Certification Must Be Denied Because Plaintiffs Lack
<u>Standing to Pursue Their Claims</u>

"[A]nalysis of class certification must begin with the issue of standing." <u>Griffin</u> <u>v. Dugger</u>, 823 F.2d 1476, 1482 (11th Cir. 1987) (defining standing as a "threshold" consideration before certification may be considered); see also, e.g., <u>Murray v.</u> <u>Auslander</u>, 244 F.3d 807, 810 (11th Cir. 2001). "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." <u>Griffin</u>, 823 F.2d at 1482; <u>Ray</u>, 2019 WL 4689214, at *11 (quotation omitted) (standing must be determined "prior to the certification of a class, and before undertaking an analysis under Rule 23").

A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class. Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, **each claim must be analyzed separately**, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.

6

Griffin, 823 F.2d at 1482 (internal citation omitted) (emphasis supplied).

As outlined in the brief in support of the City's motion for summary judgment (Doc. 109), the evidence establishes that the named Plaintiffs did not suffer any constitutional wrongs during the relevant limitations period. Further, Plaintiffs' state-law claim is barred due to their failure to follow mandatory administrative prerequisites before filing suit. For these reasons, each of the named Plaintiffs lacks standing to pursue his or her claims, and certification must be denied.

> i.     *Certification as to Plaintiffs' Federal § 1983 Claims Must Be Denied Because the Named Plaintiffs Suffered No Constitutional Deprivations During the Relevant Limitations Period*

Inherent in the issue of a named plaintiff's standing is the question of whether he or she suffered an actual injury during the relevant limitations period. If the representative plaintiff did not suffer any underlying constitutional injury at all, then that plaintiff cannot establish Article III standing to assert class-based § 1983 claims concerning such an injury. See, e.g., Thurman v. Judicial Corr. Servs., Inc., 2017 WL 4079039, at *12 (M.D. Ala. Sept. 13, 2017) (granting private probation company summary judgment where plaintiffs could not establish any injury during statutory period); cf., e.g., Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (recognizing that government entity cannot be held liable where no law enforcement employee violated the plaintiff's constitutional rights). And even if the named

plaintiff did suffer an injury as alleged, the Court may not properly certify the class if the relevant claims are barred by the statute of limitations. See Franze v. Equitable Assurance, 296 F.3d 1250, 1254-55 (11th Cir. 2002); see also Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1347 (11th Cir. 2001) (citing Carter v. W. Publ'g Co., 225 F.3d 1258, 1267 (11th Cir. 2000)) ("It is by now clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class.").

Claims pursuant to 42 U.S.C. § 1983 are governed by Alabama's two-year general personal injury statute of limitations. See, e.g., Owens v. Okure, 488 U.S. 235, 249-50 (1989); Jones v. Preiut & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989). Therefore, because Plaintiffs filed their action on March 24, 2016 (see Doc. 1), and because standing is determined as of the time of filing, see Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003), any claims that accrued prior to **March 24, 2014** are time-barred. A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir. 1990).

Even assuming that Plaintiffs' claims were otherwise cognizable, those claims would have accrued well before March 24, 2014. A full analysis of this issue appears in the City's motion for summary judgment and brief in support thereof, which the City hereby adopts and incorporates by reference. (See Docs. 108 & 109). When construing the facial sufficiency of the SAC, this Court expressly premised Plaintiffs'

§ 1983 standing on their allegations "that the City of Decatur had a policy of using its police officers to intimidate individuals at PPS offices." (Doc. 75 at 17). Yet in their depositions, the named Plaintiffs each acknowledged that neither City police officers nor any other City employees ever even *spoke* to them about fines and costs imposed in Decatur Municipal Court cases—let alone threatened, harassed, or arrested them over those amounts—during the limitations period. (See Doc. 109 at 33-34) (citing to evidentiary record). And there is no evidence that any City officials *ever* "presided over any proceedings in which they could have informed a defendant of his rights, appointed counsel, or considered alternative sentences. And certainly, [city officials] did not sentence jailees . . . ." (Doc. 109 at 36) (quoting McCullough v. Finley, 907 F.3d 1324, 1335 (11th Cir. 2018)).

In short, Plaintiffs lack standing to assert their § 1983 claims because there is no evidence of *any* violation of the named Plaintiffs' constitutional rights within the two-year limitations period.[2] See, e.g., Thurman v. Judicial Corr. Servs., Inc., No. 2:12-cv-724-RDP-TFM, 2017 WL 4079039, at *12 (M.D. Ala. Sept. 13, 2017) (finding no standing to assert claim that probation period was excessive, where

---

[2] Although Plaintiffs do not address standing at all, they at times suggest that the imposition of a particular monthly monitoring fee amounted to a constitutional injury. (See Doc. 114 at 12). But as explained in more detail *infra*, the § 1983 claims presented in this actions are not premised on the imposition of any specific fee, but instead concern allegations that Plaintiffs were threatened, harassed, intimidated, arrested, and jailed, ostensibly without counsel, for their inability to pay fines. (See Doc. 41 ¶¶ 141-68). Consequently, Plaintiffs' standing to assert their § 1983 claims cannot be premised on that fee.

evidence showed that neither named plaintiff was actually on probation for longer than allowed by law during limitations period); see also <u>Franze</u>, 296 F.3d at 1251-55 (reversing certification order where record established that representative plaintiffs' claims had accrued outside of the statute of limitations).

> ii.     *Certification as to Plaintiffs' State-Law Claim Must Be Denied Because the Named Plaintiffs Failed to Satisfy Mandatory Statutory Prerequisites to That Claim*

A party's standing to assert a claim—and to serve as a class representative as to that claim—also hinges on the satisfaction of any procedural prerequisites to the filing of suit. See <u>Griffin</u>, 823 F.2d at 1482 (holding as to Title VII class claim that "any analysis of class certification must begin with the issue of standing *and the procedural requirements of Title VII*") (emphasis supplied). Here, Plaintiffs have failed to satisfy an important procedural requirement necessary to assert their state-law claim in Count IV. Thus, certification as to that claim must also be denied.

As the City notes in its brief in support of its motion for summary judgment (Doc. 109 at 44-47), Alabama law bars a tort claim against a municipality if the claim is not presented to the City Clerk within six months of accrual. See Ala. Code § 11-47-23. That notice of claim must also follow certain formal prerequisites set forth by the Alabama Legislature. See Ala. Code § 11-47-192. These requirements are mandatory. See, e.g., <u>Hill v. City of Huntsville</u>, 590 So. 2d 876, 876 (Ala. 1991) (citation omitted). Where a plaintiff has failed to follow these mandatory

requirements before bringing a state-law claim of false imprisonment, courts are required to dismiss that claim. (See Doc. 109 at 46) (numerous citations omitted). Because the evidentiary record here establishes that none of the named Plaintiffs filed a notice of claim before bringing their state-law claim against the City in Count IV (see id. at 44-45) (citations to record omitted), that claim is barred, and Plaintiffs cannot serve as class representatives. See Griffin, 823 F.2d at 1482.

B.   Class Certification Must Be Denied Because Plaintiffs' Proposed Class is Not Adequately Defined or Clearly Ascertainable

The Eleventh Circuit has long recognized required that a proposed class must be "adequately defined and clearly ascertainable." Little, 691 F.3d at 1304 (quotation omitted). Yet, Plaintiffs have made no effort whatsoever to meet their burden of showing that their proposed class meets these requirements, and they cannot satisfy these threshold requirements in any event.

i.   *Plaintiffs' Proposed Class is Not Adequately Defined*

A class is not adequately defined if the proposed class definition is so overbroad that it is "not limited in any way" to the purported wrongdoing forming the basis of the claim. See, e.g., Walewski v. Zenimax Media, Inc., 520 F. App'x 857, 861 (11th Cir. 2012). Thus, if the proposed class would include a substantial number of people who were not in any way affected by the alleged wrongful conduct, such that those individuals whose rights *were* allegedly violated would make up a small

11

subset of that class, then the class is not adequately defined. See id.

In Ray, the plaintiffs sought to certify a class of individuals who were assigned to privately-administered probation "and who served more than 24 months on any single probation sentence." Ray, 2019 WL 4689214, at *11. But as U.S. District Court Judge R. David Proctor observed, "[u]nder Alabama law, there is not a blanket prohibition of any [probation] sentence exceeding twenty-four months," given that tolling of probation is permissible under certain circumstances. Id. at *13. Because the plaintiffs did not propose a class that was defined to account for tolling, Judge Proctor correctly concluded that the class could not be certified. Id. at *13-14.

Similarly, in Walewski, after discovering a video game defect, the plaintiff brought a claim against companies that marketed the game. See 502 F. App'x at 859. The plaintiff proposed a class including everyone who purchased the game, "presumably from anyone, anywhere, at any time—whether or not they ever were injured by (or experienced) the alleged [a]nimation [d]efect." Id. at 861. The Eleventh Circuit affirmed the district court's determination that this class definition was overbroad, not just because it was not limited to those affected by the defect, but also because it was not limited to persons who purchased from the defendants. Id. As the court concluded, the class definition was "unworkable" because "it impermissibly include[d] members who have no cause of action as a matter of law." Id.

Here, Plaintiffs propose a class encompassing *all* traffic or misdemeanor

12

defendants who, over an eleven-year period, were sentenced to financial obligations by the Decatur Municipal Court and placed on probation supervised by PPS. (See Doc. 114 at 3, 31). But as in <u>Walewski</u> and <u>Ray</u>, Plaintiffs' proposed class is overbroad in that it is not tailored to the specific claims brought in the SAC and does not account for class members who were not harmed by any unconstitutional conduct, let alone the conduct alleged in the SAC.[3] This overbroadness creates definitional problems for Plaintiffs' class before one even proceeds to the Rule 23(a) inquiry.

For example, Plaintiffs' Fourteenth Amendment claim centers on allegations that the City threatened and jailed defendants assigned to PPS-supervised probation "because of their inability to pay" fines and costs (Doc. 41 ¶¶ 141-47), and their Fourth Amendment and false arrest claims are premised on the City's alleged arrest of PPS-supervised defendants "who cannot pay fees and fines" (<u>id</u>. ¶¶ 148-55). But Plaintiffs' proposed class definition would encompass *everyone* supervised by PPS after receiving a sentence including Decatur Municipal Court fines, whether or not that person could not afford to pay those fines, and whether or not that person was every threatened, arrested, or jailed by the City on that basis. In other words, *every person* who was *ever* supervised by PPS after receiving a sentence of fines would be

---

[3]Notably, Alabama law does not bar municipal courts from including fees, fines, or costs as part of a sentence and does not prohibit privately administered probation services. Cf. <u>Ray</u>, 2019 WL 4689214, at *13-14; <u>Ray v. Judicial Corr. Servs., Inc.</u>, No. 2:12-cv-2819-RDP, 2017 WL 660842, at *11 & n.17 (N.D. Ala. Feb. 17, 2017).

a class member, *even if that person has no cause of action*. Because such a class definition is inherently "unworkable," see Walewski, 502 F. App'x at 861, Plaintiffs have failed to adequately define their class, and certification must be denied.

## ii.   *Plaintiffs' Proposed Class is Not Clearly Ascertainable*

Plaintiffs have also failed to meet their "preliminary burden" to show that their proposed class is clearly ascertainable. See Little, 691 F.3d at 1304. "The threshold issue of 'ascertainability,' relates to whether the putative class can be identified: '[a]n identifiable class exists if its members can be ascertained by reference to objective criteria.'" Ray, 2019 WL 4689214, at *12 (quoting Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014)). To satisfy this requirement, "the plaintiff must propose an administratively feasible method by which class members can be identified." Karhu, 621 F. App'x at 947; Bussey, 562 F. App'x at 787; Ray, 2019 WL 4689214, at *12; see also, e.g., Stein v. Monterey Fin. Servs., Inc., No. 2:13-cv-1336-AKK, 2017 WL 412874, at *3-4 (N.D. Ala. Jan. 31, 2017); Moore v. Walter Coke, Inc., 294 F.R.D. 620, 625 (N.D. Ala. 2013). "'Administrative feasibility' means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" Bussey, 562 F. App'x at 787.

"A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that

14

identification will be administratively feasible." <u>Karhu</u>, 621 F. App'x at 948. Further,

> a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic. The potential problems with self-identification-based ascertainment are intertwined. On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership "provide[s] inadequate procedural protection to . . . [d]efendant[s]" and "implicate[s their] due process rights." On the other hand, protecting defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a "series of mini-trials just to evaluate the threshold issue of which [persons] are class members." A plaintiff proposing ascertainment via self-identification, then, must establish how the self-identification method proposed will avoid the potential problems just described.

<u>Id</u>. at 948-49 (internal citations omitted).

Here, Plaintiffs have proposed *no method whatsoever* for ascertaining potential class members, let alone an administratively feasible method for doing so. Plaintiffs do not even identify records—in any party's possession—that would allow for the Court or the parties to ascertain the members of an appropriately defined class by objective criteria and with minimal individualized inquiry. See, e.g., <u>Bussey</u>, 562 F. App'x at 787. Indeed, Plaintiffs do not make any showing that any such records exist that "are in fact useful" for this purpose. See <u>Karhu</u>, 621 F. App'x at 948. Finally, while Plaintiffs cite a purported list of class members (See Doc. 114 at 14), that list appears to be based on nothing more than their own initial disclosures, without any indication as to whether the individuals on that list really are class members or how

their identities were ascertained. Because ascertainability is a **threshold** requirement, see <u>Little</u>, 691 F.3d at 1304, Plaintiffs' failure to even address this issue constitutes waiver and requires denial of their motion. See <u>Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.</u>, 927 F.2d 1198, 1199 (11th Cir. 1991); see also <u>U.S. Steel Corp. v. Astrue</u>, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (quotation omitted).[4]

C.    Class Certification Must Be Denied Because Plaintiffs Have Not
      <u>Established Numerosity</u>

Even if Plaintiffs' could establish standing, and even if they could show that any proposed class was adequately defined and clearly ascertainable, the Court must still undertake "a **rigorous** analysis of the [R]ule 23 prerequisites," including Rule 23(a)'s numerosity requirement. See <u>Vega</u>, 564 F.3d at 1266. "[M]ere allegations of numerosity are insufficient to meet this prerequisite . . . ." See <u>id</u>. at 1267 (quotation omitted). Although "'a plaintiff need not show the precise numbers of members in the class' . . . [n]evertheless, a plaintiff bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." <u>Id</u>. (emphasis in original). Put another way, Plaintiffs cannot simply *assert* numerosity—they must *establish* numerosity, through reference to an adequately developed factual record. See <u>id</u>.

---

[4]Nor may Plaintiffs raise this argument for the first time in any reply brief. See, e.g., <u>Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen</u>, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987).

Thus, the Court may not "assume" that a class would be numerous, even if context makes it "tempting" to do so. See id. at 1267-68 (chastising district court for assuming that class of Florida-based employees of large corporation would be sufficiently numerous). Instead, "a plaintiff still bears the burden of establishing every element of Rule 23, and a district court's factual findings [as to numerosity] must find support in the evidence before it." See id. An inference of numerosity that is not sufficiently supported by the record amounts to "sheer speculation," and certification in that context amounts to an abuse of discretion. See id.

Conclusory allegations regarding the number of potential class members, without "any evidence of how [plaintiffs] arrived at that number," are the sort of "purely speculative" assertions that cannot establish numerosity. See, e.g., Haight v. Bluestem Brands, Inc., 2015 WL 12830482 (M.D. Fla. May 14, 2015) (denying certification where plaintiff's evidence was inadequate to show that proposed class was sufficiently numerous); see also, e.g., Hill v. T-Mobile USA, Inc., No. 2:09-CV-1827-VEH, 2011 WL 10958888, at *11-12 (N.D. Ala. May 16, 2011) (denying certification in "the absence of any substantiating evidence of numerosity"); Thorne v. Accounts Receivable Mgmt., Inc., 282 F.R.D. 684, 693-94 (S.D. Fla. 2012) (same); Harris v. Liberty Cmty. Mgmt., Inc., 2011 WL 13318839, at *8 (N.D. Ga. Mar. 8, 2011) (rejecting numerosity assertions made "in a conclusory fashion and without citing to any evidence," other than "affidavits" not in the record). Further, where a

17

plaintiff provides a mere list of purported class members, but fails to provide sufficient evidence showing that the entries on the list are *actually* class members, numerosity has not been shown. See <u>Sliwa v. Bright House Networks, LLC</u>, 333 F.R.D. 255, 273 (M.D. Fla. 2019) (denying certification where plaintiff "presume[d]," but "failed to *establish*" via evidence, that lengthy list disclosed in discovery consisted of class members) (emphasis supplied).

Here, Plaintiffs premise their numerosity allegations entirely on a list of persons disclosed by Plaintiffs themselves in unsworn initial disclosures. (See Doc. 114) (citing Exh. 4 thereto). However, Plaintiffs provide no evidence showing that these individuals are actually members of any putative class. See <u>Sliwa</u>, 333 F.R.D. at 273. Indeed, Plaintiffs have provided no *evidence* whatsoever showing where these names come from or how these individuals were identified.[5] They also have not provided evidence as to whether any of those individuals were ever on probation supervised by PPS, whether they were ever threatened or harassed by the City for failing to pay court-imposed fines, whether they were arrested by Decatur police

---

[5]Plaintiffs certainly did not get these names from the City's records. In response to Plaintiffs' request for production, which specifically sought certain information pertaining to probationers from March 24, 2014 to the present, the City made *all* municipal court files from that period in its possession available for inspection by Plaintiffs. (See Exh. A, Response to RFP, at 3-4). Because the City's records consist of tens of thousands of documents, the City agreed to allow Plaintiffs' counsel to inspect these documents at a mutually agreeable time and encouraged Plaintiffs "to bring mobile copying equipment or to work collaboratively with counsel for [the City] to identify which files plaintiffs' counsel requests for copying and production." (See <u>id</u>.). However, Plaintiffs' counsel never sought to inspect or copy these documents before class discovery ended.

during the limitations period (or at all), whether such arrests were made for failing to pay court-imposed amounts, whether those individuals were ever jailed for failure to pay, or whether any such failure to pay was due to an actual *inability* to pay. See, e.g., id. (rejecting *presumptions* that list consisted of actual class members, without *evidence* to that effect); Haight, 2015 WL 12830482, at *5 (plaintiff must provide "evidence of how he arrived at that number").

Again, Plaintiffs cannot just *tell* the Court that their proposed class is sufficiently numerous—they must *prove* it. Vega, 564 F.3d at 1267 (holding that "mere allegations of numerosity are insufficient"). But instead of doing so, Plaintiffs present nothing more than an unsworn list of unclear origin, without any evidence that the people on that list really are class members. Plaintiffs' "sheer speculation" as to numerosity falls far short of meeting their burden to prove, by a preponderance of the evidence, that their proposed class is sufficiently numerous. See id. Certification must therefore be denied.

> D. **Class Certification Must Be Denied Because Plaintiffs Cannot Establish Commonality**

Under the Rule 23(a)(2) commonality requirement, a plaintiff must show that there are "questions of law or fact common to the class." Vega, 564 F.3d at 1268 (quoting Fed. R. Civ. P. 23(a)(2)). This generally means that the class action "must

involve issues that are susceptible to class-wide proof." Murray, 244 F.3d at 811. The

Supreme Court has recently elaborated on the commonality inquiry as follows:

> Th[e] language [of Rule 23(a)(2)] is easy to misread, since any competently crafted class complaint literally raises common questions. For example: Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? **Reciting these questions is not sufficient to obtain class certification.** Commonality requires the plaintiff to demonstrate that the class members have suffered ***the same injury.*** This does not mean merely that they have all suffered a violation of the same provision of law. . . . Quite obviously, the mere claim by employees of the same company that they have suffered a [cognizable] injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their ***claims*** must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve *an issue that is **central to the validity of each one of the claims*** in one stroke.
>
> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers ***apt to drive the resolution of the litigation***. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

Dukes, 564 U.S. 349-50 (quotations and alterations omitted) (emphasis supplied).

As this explication of the Rule 23 commonality standard demonstrates, a

"common question" for Rule 23(a)(2) purposes is not simply a broad question of

shared identity between putative class members if the shared characteristic is not "apt

to drive the resolution of the litigation." See id.; see also Ray, 2019 WL 4689214, at

*16 (noting that <u>Dukes</u> "unquestionably raised the bar on what a plaintiff must show to establish commonality"). Rather, "the common question for commonality purposes" must generate answers that bear some "central" nexus to the claims for which the class is to be certified. See, e.g., <u>Venerus v. Avis Budget Car Rental, LLC</u>, 723 F. App'x 807, 815 (11th Cir. 2018).

Plaintiffs' proposed class definition appears to suggest a single common question: whether the putative class members were sentenced in Decatur Municipal Court to both PPS-supervised probation *and* court-imposed fines and fees. (See Doc. 114 at 3).[6] However, under the standard outlined in <u>Dukes</u>, an answer in the affirmative to this purportedly common question does nothing to establish that putative class members "have suffered the same injury" alleged in Plaintiffs' claims against the City. See <u>id</u>. at 350.

Consider Count I, Plaintiffs' Fourteenth Amendment claim. Certainly someone pursuing a claim that he was jailed for an alleged inability to pay fines through his PPS-supervised probation (see Doc. 41 ¶ 142) must first prove that he was sentenced to fines and PPS-supervised probation. But this is functionally indistinguishable from saying that a person claiming employment discrimination by Wal-Mart must first

---

[6]Plaintiffs also suggest that a "monthly monitoring fee" was common to class members. (See Doc. 114 at 17). But as explained in more detail *infra*, the issue of the monitoring fee is not only an individualized question, it is totally irrelevant to their claims, and therefore not "central to the validity" of those claims for commonality purposes.

prove that she was employed by Wal-Mart. See <u>Dukes</u>, 564 U.S. at 349. As the Supreme Court has observed, answering these questions in the affirmative does not go towards establishing that either plaintiff has "suffered the same injury" contemplated by the claim at issue. <u>Id</u>. at 350. For example, a putative class member under this definition may have never been arrested or jailed *at all* following her sentencing, or she may have been subsequently arrested on charges unrelated to a failure to pay fines, or she may have been arrested after willfully refusing to pay fines despite having the means to do so. Just as the fact of previous employment was not "central to the validity" of the sex discrimination claim in <u>Dukes</u>, the mere fact of a putative class member's sentence to pay fines is not "central to the validity" of his claim that he was subsequently jailed for being unable to pay that fine. <u>Id</u>. at 349-50.

Indeed, the Supreme Court has recognized that the sorts of issues implicated by <u>Bearden</u> claims under the Fourteenth Amendment are *highly* individualized, since

> the reasons for non-payment[] [are] of critical importance here. *If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction* to enforce collection. Similarly, *a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution* may reflect an insufficient concern for paying the debt he owes to society for his crime. *In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty* for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the

22

defendant are available.

See Bearden v. Georgia, 461 U.S. 660, 668-69 (1983) (internal citations omitted).

This case therefore differs substantially from Ray, in which the parties did not dispute commonality. See 2019 WL 4689214, at *16. With respect to their Fourteenth Amendment and Sixth Amendment claims, the plaintiffs in Ray pointed to record evidence to substantiate their arguments of "common evidence" and "common proof." See id.[7] By contrast, Plaintiffs have pointed to *nothing* in the record sufficient to prove, by a preponderance of the evidence, that the proposed class members share common questions that could yield common answers that are "central to the validity of [their] claims." See Dukes, 564 U.S. at 350.

Instead, this case more closely resembles Hurt v. Shelby County Board of Education, No. 2:13-CV-230-VEH, 2014 WL 4269113 (N.D. Ala. Aug. 21, 2014), in which U.S. District Court Judge Virginia E. Hopkins denied certification due to an absence of commonality. That action centered on claims that a teacher formerly employed by the defendant school board had abused students. See Hurt, 2014 WL 4269113, at *1. The plaintiffs proposed a class that included not just students who had suffered or witnessed abuse by the teacher, but also *other* students who had purportedly been indirectly "exposed to a sexually hostile educational environment."

---

[7]See also Pls.' Memorandum of Points and Authorities in Support of Motion for Class Certification, Ray v. Judicial Corr. Servs., Inc., 2:12-cv-2819-RDP, Doc. 709 at ECF 32, 34 (N.D. Ala. Oct. 22, 2018) (arguing that allegations were "corroborated" by evidence).

23

See id. at *11. Judge Hopkins found that depending on the circumstances, each student would have suffered "fundamentally different injuries," meaning that the purported common thread—having been a student of the school board—had no bearing on "whether the class plaintiffs suffered the same injuries and whether those injuries permit common answers." See id. at *11-12 ("[P]laintiffs may not abstract the commonality inquiry to this level. The court must instead discern whether they were all denied educational opportunities *in similar ways*."). Without more, commonality could not be established based merely on the students' shared characteristics:

> There are, to be sure, certain similarities within the plaintiffs' proposed class. They are all females, they were all (at different times) fourth graders at schools within Shelby County, and their gravamen in every case concerns the conduct of [the teacher] and the Board . . . . The class plaintiffs also all invoke Title IX and claim relief under its provisions. These commonalities, however, are insufficient—as is obvious from the Supreme Court's explanation [in Dukes]. It is not enough that the plaintiffs are all of the same sex, lived and went to school within the same locality, and invoke the same law against the same defendants. What is dispositive is whether they "suffered the same injury," such that they are essentially voicing a common contention (or contentions) against the defendants and can consequently secure class-wide relief. Such is not the case in the present action.

Id. at *10 (internal citation omitted).

The same is true here. While Plaintiffs' putative class members share "certain similarities" in that each person was sentenced to probation and court-imposed fines, Plaintiffs have not shown that this common characteristic can yield a common answer "capable of classwide resolution [such that] determination of its truth or falsity will

resolve an issue that is *central to the validity* of each one of the claims *in one stroke*."

Dukes, 564 U.S. at 350 (emphasis supplied). For this reason, and because Plaintiffs

motion identifies no other "common question for commonality purposes,"

certification is not proper. See Venerus, 723 F. App'x at 815.

E.    Class Certification Must Be Denied Because Plaintiffs' Claims
      Are Not Typical of Class Claims

"[T]ypicality measures whether a sufficient nexus exists between the claims of

the named representatives and those of the class at large." Vega, 564 F.3d at 1275.

"A sufficient nexus is established if the claims or defenses of the class and the class

representative arise from the same event or pattern or practice and are based on the

same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337

(11th Cir. 1984). Thus, while commonality "refers to the group characteristics of the

class as a whole," typicality "refers to the individual characteristics of the named

plaintiff[s] in relation to the class." Piazza, 273 F.3d at 1346.

"Typicality also encompasses the question of the named plaintiff's standing,

for '[w]ithout individual standing to raise a legal claim, a named representative does

not have the requisite typicality to raise the same claim on behalf of a class.'" Id.

(quoting Prado-Steiman, 221 F.3d at 1279). Therefore, "[i]f [a representative

plaintiff's] claim is time-barred, he cannot assert the claim against [defendants] on

behalf of the class." Id. at 1347; see also, e.g., Tarvin v. DirecTV, 2:15-cv-1237-

AKK, 2016 WL 6246813, at *5 (N.D. Ala. Sept. 13, 2016).

For the reasons stated *supra*, the named Plaintiffs' claims are not typical of any such claims brought by members of the proposed class because Plaintiffs lack standing. As to Plaintiffs' § 1983 claims, there is no evidence of any underlying Fourteenth Amendment, Fourth Amendment, or Sixth Amendment violation involving any of the named Plaintiffs within two years of the original filing date of Plaintiffs' complaint, and any alleged conduct occurring *before* that date is plainly barred by the statute of limitations. (See Doc. 109 at 31-34); see also Jones, 876 F.2d at 1483. Similarly, Plaintiffs lack standing to pursue their state-law claim because they failed to provide proper notice of their claims to the City as required under state law. (See Doc. 109 at 44-47); see also, e.g., Hill, 590 So. 2d at 876 (citing Ala. Code §§ 11-47-23, -192). "Without individual standing to raise a legal claim," Plaintiffs may not proceed as class representatives. See Prado-Steiman, 221 F.3d at 1279.

Relatedly, Plaintiffs cannot satisfy the typicality requirements of Rule 23(a)(3) because the City is entitled to summary judgment on the merits as to the named Plaintiffs' individual claims. (See Doc. 109 at 34-44) (§ 1983 claims); (id. at 47-49) (state-law claim). Simply put, since Plaintiffs did not suffer a cognizable injury, they are not "typical" of those who ostensibly did. Because Plaintiffs have not identified any other possible class representatives, they have failed to meet their burden to show that certification is proper. See, e.g., Brown, 817 F.3d at 1234.

26

F.      Because Plaintiffs Do Not Seek Injunctive or Declaratory Relief
        At All, Certification Under Rule 23(b)(2) Must Be Denied

Somewhat absurdly, Plaintiffs contend that they are entitled to certification

under Fed. R. Civ. P. 23(b)(2) because injunctive or declaratory relief is purportedly

the "predominant"[8] form of relief they seek. (See Doc. 114 at 22-24). However, this

Court has already found that "the plaintiffs **have not specifically requested**

**declaratory or injunctive relief** in the operative complaint." (Doc. 75 at 17)

(emphasis supplied). The law of the case bars Plaintiffs' eleventh-hour effort to assert

the *existence*—let alone *predominance*—of a request for injunctive or declaratory

relief, and the Court must deny Rule 23(b)(2) certification without further discussion.

Even if Plaintiffs' SAC could somehow be construed as seeking declaratory or

injunctive relief, certification of a Rule 23(b)(2) class is not appropriate. Just five

months ago, the Eleventh Circuit confronted a similar request for Rule 23(b)(2)

certification in AA Suncoast. That case concerned a Florida law providing that

injured motorists who suffered an emergency medical condition ("EMC") were

entitled to $10,000 in personal injury benefits; otherwise, such benefits were capped

at $2,500. See AA Suncoast, 938 F.3d at 1172. The plaintiffs alleged that the

---

[8]The Supreme Court has rejected the "predominance" test for Rule 23(b)(2) certification, and it has even cast doubt on the Eleventh Circuit's "stricter" test allowing for monetary relief that is "incidental" to injunctive relief. See AA Suncoast, 938 F.3d at 1174 n.2, 1177 n.5 (citing Dukes, 564 U.S. at 365-66). For the reasons stated here, Plaintiffs are not entitled to Rule 23(b)(2) certification regardless of the standard applied.

defendant insurance carrier had relied on negative EMC determinations by improper providers in order to limit their benefits. See id. The plaintiffs brought a claim seeking an order declaring that the carrier's EMC practices were unlawful and restoring the higher coverage limits for affected policies. See id. at 1173. The plaintiffs then sought, and the district court granted, certification of a Rule 23(b)(2) class consisting of claimants (and their healthcare provider assignees) whose benefits had been capped due to negative EMC determinations. See id.

On interlocutory appeal, the Eleventh Circuit reversed, finding three grounds to conclude that the plaintiffs had disingenuously styled a damages class as one seeking injunctive relief. See id. at 1175. First, the court noted that plaintiffs' theory of standing was premised entirely on *past* harms, supported by allegations that the carrier had "'*denied* each Class member a fair opportunity' to prove an entitlement to benefits over $2,500" and thereby "*injured*" the class members. See id. at 1176. "What [plaintiff] is *not* saying in that statement," the court observed, "is that it has an interest in the proper handling of future claims. Instead, it has an ongoing interest in getting paid for past claims that have been rejected." See id. Second, the court recognized that the plaintiffs' request for relief—seeking reinstatement of coverage—only "look[ed] backward" to address "an injury already suffered." See id. at 1176-77. Third, the Eleventh Circuit held that the "class definition itself reveals that [plaintiff] is seeking retrospective relief," as it was only defined to include

28

claimants and providers who had *previously* been harmed. See <u>id</u>. at 1177-78 (emphasis supplied). "In the end," the court held,

> the retrospective nature of [plaintiff's] class and claim make clear that an injunction is not the right remedy in this case—indeed, it is not really the remedy that [plaintiff's] class is seeking. And because an injunction is not the right remedy, Rule 23(b)(2) is not the right path to class certification . . . .

<u>Id</u>. at 1178.

For the same reasons—looking to Plaintiffs' assertions of injury, requests for relief, and class definition—it is clear that injunctive relief "is not really the remedy that [Plaintiffs'] class is seeking." See <u>id</u>. Plaintiffs' SAC is awash with allegations concerning *past* harm, without *any* expression of concern that the conduct alleged therein was likely to occur again in the future. (See, e.g., Doc. 41 ¶¶ 25-140). Each claim against the City expressly seeks "an award of damages," without *any* explicit mention of injunctive relief. (See Doc. 41 ¶¶ 146, 154, 161, 168); (see also Doc. 75 at 17). Even where discussing certification under Rule 23(b)(2), the SAC includes no reference to future harms and no true demand for future relief; indeed, punitive damages for *past* harms are the *only* form of relief discussed in that section of the SAC, or anywhere else.[9] (See <u>id</u>. at 28-29).

---

[9] Plaintiffs' passing request that the Court "enjoin[]" certain conduct, made in the prefatory paragraphs of the SAC (see Doc. 41 ¶ 11-12), does not change this conclusion. See <u>AA Suncoast</u>, 938 F.3d at 1176-77 ("[J]ustifying a class that is all about damages with a *de minimis* request for injunctive relief is like trying to prop up a tower with a toothpick.").

As in <u>AA Suncoast</u>, matters outside of the pleadings confirm that Plaintiffs' ostensible request for injunctive relief is merely "a fig leaf attempting to cover [their] demand for past relief." See 938 F.3d at 1177. Plaintiffs' proposed class encompasses only persons who allegedly suffered *past* harms, including those who "*incurred* court-imposed financial obligations" and "*were supervised* on probation" by PPS. (Doc. 114 at 3). "Nothing in that definition envisions future harm." <u>AA Suncoast</u>, 938 F.3d at 1177. And the undisputed evidence shows that there is no likely prospect for future harm—the City's Contract with PPS expired years ago, and the City has not provided probation services for the Decatur Municipal Court since that time. (Alexander Aff., Doc. 110-1, ¶ 7). "The chance that lightning might strike twice is not enough to justify injunctive relief." <u>AA Suncoast</u>, 938 F.3d at 1177.

"[N]o amount of hammering can make [Plaintiffs'] square peg fit into Rule 23(b)(2)'s round hole." <u>Id</u>. at 1175. Plaintiffs do not demand damages as *incidental* relief; it is the *only* relief they seek. Certification under Rule 23(b)(2) must be denied.

G. Certification Under Rule 23(b)(3) Must Be Denied Because Plaintiffs Have Failed to Show That Common Questions Predominate Over Individualized Inquiries

In addition to the mandates of Rule 23(a), "Rule 23(b)(3) imposes two additional requirements: a plaintiff must show 'predominance' and 'superiority.'" <u>Ray</u>, 2019 WL 4689214, at *18. "Common issues can predominate only if they have a '**direct impact** on **every** class member's efforts to establish liability that is more

substantial than the impact of individualized issues in resolving the claim or claims of each class member.'" Carriuolo v. Gen. Motors Co., 823 F.3d 977, 985 (11th Cir. 2016) (citation omitted). To satisfy this standard, Plaintiffs must (1) identify the elements of the relevant claims and defenses; (2) point to evidence that will be offered to prove these elements in order to classify these issues as either common questions, where "the same evidence will suffice for each member," or individual questions, "where the evidence will var[y] from member to member"; and (3) prove, by a preponderance of the evidence, that common questions will predominate over individual questions. Brown, 817 F.3d at 1234; Ray, 2019 WL 4689214, at *18-19.

Plaintiffs have not met this standard. The record establishes that individual questions concerning standing and the elements of each claim will fully predominate over any purported common issues. Accordingly, certification must be denied.

> i.   *Standing*

Just as a named class representative's lack of standing will preclude a finding of typicality, so may a putative class member's lack of standing preclude a finding of predominance under Rule 23(b)(3). Although justiciability concerns are not necessarily triggered at the certification stage if *some* class members lack standing,

> on the other hand, [Eleventh Circuit] case law does not suggest that the absent class members' standing is entirely irrelevant. In some cases, whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23. . . . Among the factors that we have

31

directed district courts to consider before certifying a class are "how the class will prove causation and injury and whether those elements will be subject to class-wide proof," since "[t]he issue of liability . . . includes not only the question of violation, but also the question of fact of injury. *If many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class*.

Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1272-73 (11th Cir. 2019) (emphasis supplied).

The Eleventh Circuit's recent decision in Cordoba establishes that the standing of putative class members is not only a factor the Court *must* consider, it is also "an individualized issue" that, depending on the circumstances, "may predominate over common issues susceptible to class-wide proof." See id. at 1275. In particular, the issue of standing "poses a powerful problem under Rule 23(b)(3)'s predominance factor," id. at 1273, "when it appears that a large portion of the class does not have standing, as it seems at first blush here, and making that determination for these members of the class will require individualized inquiries." Id. at 1277. Because of these concerns, "a class **should not be certified** if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." See id. at 1276 (quoting Kohen v. Pac. Inv. Mgmt. Co., LLC, 571 F.3d 672, 677 (7th Cir. 2009)) (bold emphasis supplied, underlined emphasis in Cordoba).

This case presents the exact same standing and predominance problems addressed in Cordoba. Although Plaintiffs' proposed class encompasses all persons sentenced to certain obligations from *May 2004* through December 2015, a putative member will not have standing to pursue any § 1983 claims in this action unless her claims accrued no earlier than *March 24, 2014*. Since the maximum probation period for misdemeanor offenses under Alabama law is generally two years, see Ala. Code § 15-22-54(a), it is highly unlikely that any putative class member who was last sentenced between May 2004 and March 23, 2012 suffered a cognizable injury on or after March 24, 2014. Consequently, the vast majority of putative class members would almost certainly be time-barred from asserting any § 1983 claims in this action. And it is no answer to say that many of these otherwise time-barred members could assert the continuing violations doctrine or some other exception to the general accrual rules; if anything, that only highlights that the Court could become hopelessly mired in countless individual accrual analyses in order to satisfy the dictates of Article III. See Cordoba, 942 F.3d at 1274. One way or another, individual standing issues would quickly predominate over any purported common questions.

Even if a proper temporal limitation were included in Plaintiffs' class definition, it is still apparent that a majority of class members would lack standing to pursue the claims at issue here. In Cordoba, the claims at issue concerned marketing phone calls to persons who had previously requested not to receive those calls, but

the plaintiff sought to certify a class of *all individuals* who received multiple phone calls from the defendant's telemarketer. See id. at 1265-66. From the face of the filings before it—and absent any evidence to the contrary—the Eleventh Circuit recognized that it was highly probable that "many," if not "a majority," of persons who received multiple phone calls from the telemarketer had not affirmatively requested to be added to a do-not-call list. See, e.g., id. at 1275-77 (citing, e.g., Kohen, 571 F.3d at 677) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."). Similarly, it is highly likely that "many" ("even a majority") of the individuals sentenced to PPS-supervised probation were *not* subsequently arrested and jailed due to an inability to pay court-ordered fines—and most importantly, despite bearing the burden here, *Plaintiffs point to nothing in the record showing otherwise*. On these grounds alone, Plaintiffs have failed to satisfy the predominance requirement of Rule 23(b)(3), and certification is inappropriate.

ii.   *Monthly Monitoring Fees*

Even setting aside the concerns raised by the Eleventh Circuit in Cordoba, Plaintiffs have not really articulated an analysis of their Rule 23(b)(3) burden. Indeed, Plaintiffs spend just *two paragraphs* on their predominance analysis. (Doc. 114 at 29). Even more bizarrely, Plaintiffs focus their analysis on a single purported "common legal theory" concerning the monthly monitoring fee imposed in some PPS-

34

supervised cases by order of the Decatur Municipal Court. (See <u>id</u>.). In fact, a casual observer could be forgiven for inferring from Plaintiffs' motion that this *entire case* depends on the propriety of this particular monthly fee. (<u>Id</u>. at 12) ("The additional and recurring $35.00 monthly monitoring fee . . . is an unconstitutional [*sic*]."); (<u>id</u>. at 17) ("The instant case involves a prospective class of persons who claim they are entitled to compensation as a result of the monthly monitoring fee."); (<u>id</u>. at 29) ("The common legal theory is based on the monitoring fees for one's poverty.").

But this is not the case, and Plaintiffs' argument fails to establish predominance on multiple grounds. First, the allegations of Plaintiffs' SAC make crystal clear that their theory of this case is *not* dependent on the imposition of any particular fee, but on the City's alleged threats, harassment, intimidation, arrests, and jailing of Decatur Municipal Court defendants for a purported inability to pay *any* court-imposed fines and fees. (See Doc. 41 ¶¶ 141-68). Put another way, the monthly monitoring fee is irrelevant to this case and has nothing to do with the predominance analysis.[10]

_____

[10]On the other hand, if Plaintiffs *had* premised their claims against the City on the theory that the monthly monitoring fee was unlawful, the City would be entitled to judgment as a matter of law, and the entire question of certification would become moot. As Judge Proctor has recognized, monthly probation supervision fees paid to private companies *are not prohibited by law*. See <u>Ray v. Judicial Corr. Servs., Inc.</u>, 270 F. Supp. 3d 1262, 1301 (N.D. Ala. Sept. 12, 2017). This very Court, relying on the same authorities cited by Judge Proctor, has already held that "PPS had a lawful claim to fines and fees," including the monthly monitoring fee. (See Doc. 75 at 23) (Ala. Code §§ 12-14-13(d)(7) and 12-14-13(I)). For these reasons, courts have dismissed a variety of claims premised on such fees. (See <u>id</u>.) (Hobbs Act claim); <u>Ray</u>, 270 F. Supp. 3d at 1302 (Fourteenth Amendment claim); see also, e.g., <u>Hamilton v. Judicial Corr. Servs., LLC</u>, No. 2:18-cv-933-RDP, 2019 WL 5963473, at *4-5 (N.D. Ala. Nov. 13, 2019) (state-law money had and received claim); <u>Woods v. Judicial Corr. Servs., Inc.</u>, No. 2:15-cv-493-RDP, 2019 WL 2388995, at *15-17 (N.D. Ala.

Second, and relatedly, the Rule 23(b)(3) inquiry requires the party seeking class certification to refer to "the parties' claims and defenses and their elements" in establishing that common questions predominate. See <u>Brown</u>, 817 F.3d at 1234. However, Plaintiffs' perfunctory predominance analysis does not at all look to the elements of their actual claims or the City's defenses, but instead focuses on the irrelevant issue of monthly monitoring fees. (See Doc. 114 at 29). On this basis alone, Plaintiffs have failed to meet their burden to show that certification is proper.

Third, the imposition of a monthly monitoring fee is not even a common characteristic among putative class members. The Decatur Municipal Court was fully empowered to order that indigent probationers be supervised without imposing a monthly monitoring fee. (See Exh. A to Alexander Aff., Doc. 110-1 at ECF 17). Even if fines or fees were initially ordered, the Court was also empowered to later convert those fees to community service hours. (See <u>id</u>.). It is therefore possible that putative class members—those sentenced to supervised probation and court-imposed fees (Doc. 114 at 3)—were subsequently *relieved* of any monitoring fee. In fact, one of the named Plaintiffs achieved this very outcome. (See Doc. 109) (citing Bledsoe Depo. 92:12-21 & Exhs. 2, 6). Thus, not only is the issue of monthly monitoring fees not a *relevant* question, it is not even a *common* question among putative members.

---

June 5, 2019) (Eighth Amendment claim).

Because Plaintiffs' cursory Rule 23(b)(3) analysis focuses on wholly irrelevant issues, Plaintiffs have failed to carry their burden to show that certification is warranted. Moreover, as discussed below, a proper Rule 23(b)(3) analysis focusing on the elements of Plaintiffs' claims makes clear that individualized issues predominate and that certification must be denied.

### iii. Count I (Fourteenth Amendment)

In their Fourteenth Amendment claim, Plaintiffs allege that they were threatened, harassed, intimidated, and ultimately incarcerated because they were unable to pay court-imposed fines and fees. (See Doc. 41 ¶¶ 141-47). As Plaintiffs' appear to concede at times, this claim is governed by principles articulated by the Supreme Court in <u>Bearden v. Georgia</u>, 461 U.S. 660 (1983), which in turn relies in part on <u>Tate v. Short</u>, 401 U.S. 395 (1971). (See Doc. 114 at 23-24).

Because Judge Proctor addressed an identical Fourteenth Amendment claim in <u>Ray</u> in the context of a motion for certification, his analysis in that case is instructive. See <u>Ray</u>, 2019 WL 4689214, at *21-22. Judge Proctor first observed that plaintiffs would have to establish the following elements to succeed on their claim: (1) that putative class members "were arrested and jailed for failure to pay court debt"; (2) that class members "were jailed without the required <u>Bearden</u> determination"; (3) that the defendant was "the moving force behind these constitutional violations"; (4) that

the class members suffered damages as a result; and (5) that there existed "an administratively feasible method of proving damages in a class context." Id. at *21.

After articulating these elements, Judge Proctor held that the first element—a showing "not just that the probationer was jailed, but that he or she was jailed *because of a failure to pay*"—would "require an individualized inquiry," since a probationer could be jailed for many reasons that did not implicate Bearden concerns. See id. (emphasis supplied). And the second element, whether class members were jailed without an indigency determination, was even more problematic:

> First (and again), analysis of it will require an individualized inquiry. Second, establishing this element is complicated by the fact that Plaintiffs must prove both an affirmative and a negative. Plaintiffs must affirmatively prove indigency. They must also show absence of an appropriate Bearden hearing. And, they must make such a showing on a class wide basis. . . . [T]he Plaintiffs' indigency claim involves their assertion that on a class wide basis, probationers were jailed for not paying the fines (and fees). But to succeed, Plaintiffs are required to show that the class members were unable to pay (which, itself will require individualized proof) and steer around the issue of whether any failure to pay was willful. . . . [W]illfulness will have to be examined on a case-by-case basis for each probationer. . . . Therefore, this claim will require individualized examinations of the reason for each revocation hearing, what topics were covered at a plethora of hearings, and whether the facts of each hearing amounted to a Bearden violation. This level of detailed, individualized proof demonstrates that common issues do not predominate here.

Id. at *22. Finally, Judge Proctor held that compensatory damages for arrests, days spent in jail, and days spent on probation "require inherently individualized assessments." See id. (quoting Brown, 817 F.3d at 1240) ("[I]ndividual damages

38

defeat predominance when, as here related to Plaintiffs' <u>Bearden</u> claim, they are accompanied by 'significant individualized questions going to liability.'"). Because these overwhelmingly individualized assessments predominated over any common facts or legal issues, Judge Proctor found that the plaintiffs failed to establish that a Rule 23(b)(3) class was appropriate. See <u>id</u>.

Judge Proctor's reasoning applies with equal force to Count I in this action. Plaintiffs' Fourteenth Amendment claim against the City, which is effectively identical to the <u>Bearden</u> claim at issue in <u>Ray</u>, will require this Court to make the same individualized determinations as to (1) whether each putative class member was jailed at all; (2) whether he or she was jailed for failure to pay; (3) whether that failure to pay was "willful," see <u>id</u>. (citing <u>Bearden</u>, 461 U.S. at 668); (4) whether he or she was jailed without first being provided a hearing; (5) whether indigency was addressed at any hearing; (6) whether he or she was actually indigent; (7) "whether the facts of each hearing amounted to a <u>Bearden</u> violation," see <u>id</u>.; and (8) the quantum of damages, see <u>id</u>. (citing <u>Brown</u>, 817 F.3d at 1240).[11] Even if Plaintiffs had identified any common questions here—which they have not—it is beyond serious dispute that these individual inquiries would predominate over those issues. Thus, for the reasons articulated by Judge Proctor in <u>Ray</u>, Plaintiffs have not established

---

[11] Plaintiffs concede that the quantum of damages as to their claims will require individualized determinations. (See Doc. 114 at 29).

predominance as to their Fourteenth Amendment claim in Count I.

    *iv.*  *Count II (Fourth Amendment)*

Plaintiffs' Fourth Amendment claim asserts that City police officers arrested class members without probable cause, based on a failure to pay court-imposed fines and fees. (Doc. 41 ¶¶ 148-55). Similar to Count I, in resolving this claim as to *each* putative class member, the Court must determine (1) whether the putative member was arrested at all; (2) whether that arrest was for failure to pay previously imposed fines; (3) whether the failure to pay was "willful," see <u>Bearden</u>, 461 U.S. at 668; (4) whether the failure to pay was due to indigency; (5) whether the arrest was otherwise supported by probable cause to believe that *another* offense had been committed, see, e.g., <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 584 n.2 (2018); (6) whether a City policy or custom was the "moving force" behind the arrest, see, e.g., <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978); and (7) damages.

Even if all of the foregoing factors could somehow be resolved in a classwide manner, the Court must also determine as to each arrest (8) whether it was pursuant to a warrant; if so, the inquiry breaks down even further. The Court must then determine (9) whether a City police officer secured the warrant, and if so, (10) whether the officer did so "based on an affidavit that 'articulate[d] neither the basis for her belief that [the suspect] violated the law nor any affirmative allegation that she had personal knowledge of the circumstances of [the] alleged crime.'" See, e.g.,

Carter v. Gore, 557 F. App'x 904, 908-09 (11th Cir. 2014). On the other hand, if the City police officer simply executed an existing warrant, then the putative member's claim under the Fourth Amendment is properly construed as a malicious prosecution claim. See id. at 906 (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). In that case, the Court must then inquire into the remaining elements of a common-law tort of malicious prosecution, namely (11) whether the member was subjected to criminal prosecution (12) with malice and without probable cause (13) that terminated in the member's favor. See, e.g., Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).

These individualized issues emphasize a critical point: the Fourth Amendment requires that an arrest be "objectively reasonable under the *totality of the circumstances*" known to the arresting officer. E.g., Holland v. City of Auburn, Ala., 657 F. App'x 899, 903 (11th Cir. 2016) (emphasis supplied). And it is precisely the individualized nature of the circumstances surrounding each arrest that renders Count II unamenable to class adjudication. As with Count I, that analysis will necessary require diving into "individualized inquiries" concerning whether an arrest even occurred, whether the member was indigent, whether any failure to pay was willful, and so forth. Cf. Ray, 2019 WL 4689214, at *22. And on top of that, the analysis will require individual inquiry into other circumstances underlying the arrest, such as the existence of other warrants and/or probable cause to believe other crimes had been committed. *Even the elements that must be considered are individualized to the*

*circumstances of the case.* Compare <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004) (elements of warrantless § 1983 false arrest claim), to <u>Carter</u>, 557 F. App'x at 906 (elements of § 1983 malicious prosecution claim), to <u>id.</u> at 908-09 (additional elements of specific warrant-based § 1983 Fourth Amendment claims).

"The premise of the class certification is that one rule applies to all members. Because reasonableness is a standard rather than a rule, and because one [arrestee]'s circumstances differ from another's, common questions do not predominate and class certification is inappropriate." See, e.g., <u>Portis v. City of Chicago, Ill.</u>, 613 F.3d 702, 705 (7th Cir. 2010) (internal citation omitted).

     *v.    Count III (Sixth Amendment)*

As to Plaintiffs' Sixth Amendment claim, the Court once again has the benefit of Judge Proctor's analysis in <u>Ray</u>:

> To establish this claim, Plaintiffs must establish indigency and a deprivation of the right to counsel. As this court has already determined, proof of indigency is inherently individualized. . . .
>
> [Further,] whether a probationer received court-appointed counsel is not the only [other] case-by-case inquiry required on this motion. For those who did not have counsel, there is still another question: whether the probationer at issue validly waived counsel? This requires another individualized inquiry. . . . In the class context, that inquiry would require an examination of what was discussed with each class member at each sentencing.
>
> As with Plaintiffs' <u>Bearden</u> claim, proof of damages will be required on Plaintiffs' Sixth Amendment claim. That will require an individualized assessment of actual compensatory damages. Again, when such an

individualized inquiry is combined with "significant individualized questions going to liability," that combination tends to defeat predominance. <u>Brown</u>, 817 F.3d at 1240 (quoting <u>Klay</u>, 382 F.3d at 1260). Therefore, the court cannot say that common questions of fact and law predominate in relation to [Plaintiffs'] Sixth Amendment claim.

<u>Ray</u>, 2019 WL 4689214, at *22-23. Because the same reasoning applies to Plaintiffs' own Sixth Amendment claim, certification as to Count III is unwarranted.

    *vi. Count IV (False Imprisonment)*

  Plaintiffs' state-law false imprisonment claim asserts that City police officers arrested and imprisoned class members due to their inability to pay court-imposed fines and fees. (See Doc. 41 ¶¶ 163-68). To prevail on a false imprisonment claim, a plaintiff may show that he or she was falsely arrested without probable cause. See, e.g., <u>Bey v. Abrams</u>, 2017 WL 1407507, at *9 (N.D. Ala. Apr. 20, 2017) (citations omitted). Thus, as with Count II, analysis of any putative member's state law claim will turn on the individual circumstances of each arrest, including whether probable cause existed to believe that *any* offense had been committed, based upon the totality of the *individual* circumstances known to the officer. See, e.g., <u>Wesby</u>, 138 S. Ct. at 584 n.2; <u>Dixon v. State</u>, 588 So. 2d 903, 906 (Ala. 1991).

  Moreover, Alabama municipalities cannot be held vicariously liable where the agent whose conduct allegedly created the liability is immune from suit. See, e.g., <u>Hollis v. City of Brighton</u>, 885 So. 2d 135, 142 (Ala. 2004). Alabama law provides immunity to law enforcement officers from tort liability for conduct within the scope

of their discretionary law enforcement duties, such as a warrantless arrest or an arrest pursuant to a capias warrant. See Ala. Code § 6-5-338(a); see also Ex parte City of Tuskegee, 932 So. 2d 895, 905-906 (Ala. 2005). If an officer is entitled to immunity under the particular facts of the case, then so is the municipality he or she works for. See Ala. Code § 6-5-338(b). And even if an exception to discretionary immunity applies in a specific case, further inquiry is needed to see whether the officer acted willfully, maliciously, or in bad faith *in that case*, at which point Ala. Code § 11-47-190 would immunize the City. See, e.g., Hardy v. Town of Hayneville, 50 F. Supp. 2d 1176, 1201-02 (M.D. Ala. 1999). (See generally Doc. 109 at 47-50).

In this case, *every* arrest of *every* putative class member would be subject to an immunity analysis under Alabama law. This analysis would necessarily encompass a review of the actions of *every* arresting officer, each of which would be entitled to establish facts relevant to a *prima facie* defense of State-agent immunity and/or peace-officer immunity under Ala. Code § 6-5-338(a), which would in turn entitle the City to immunity under Ala. Code § 6-5-338(b). The putative class member would then be afforded an opportunity to establish that one of the numerous "exceptions" to State-agent immunity is applicable under the individual facts of his or her case. See Hollis, 885 So. 2d at 144. And even if the putative class member could establish that an "exception" to immunity applied, the City would be entitled to present evidence

44

that it is nonetheless immunized from liability under Ala. Code § 11-47-190 under the particular facts of that case. See, e.g., <u>Hardy</u>, 50 F. Supp. 2d at 1201-02.

In summary, it is clear that any analysis of Count IV "breaks down into an unmanageable variety of individual legal and factual issues." See, e.g., <u>Babineau v. Fed. Exp. Corp.</u>, 576 F.3d 1183, 1191 (11th Cir. 2009). Because those individual issues plainly predominate, Rule 23(b)(3) certification must be denied.

H.   Certification Under Rule 23(b)(3) Must Be Denied Because Class-Wide Adjudication is Not Superior to Other Alternatives

"Certification under Rule 23(b)(3) also requires that the class action device 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'" <u>Williams v. Mohawk Indus., Inc.</u>, 568 F.3d 1350, 1358 (11th Cir. 2009). The Eleventh Circuit considers a non-exhaustive list of factors that are relevant to this inquiry, including "the likely difficulties in managing a class action." See <u>id</u>. However, "[i]n many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individualized issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." <u>Id</u>. (quotation omitted). "The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them." <u>Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs.</u>, 6012 F.3d 1159, 1184 (11th Cir. 2010).

Plaintiffs have not satisfied their burden to show that common questions even exist, let alone that they predominate over individual inquiries. The overwhelming number of questions that must be resolved on a case-by-case basis, regardless of any superficially common characteristics, renders a class action wholly unmanageable for resolving Plaintiffs' claims. Because class adjudication would "create relatively more management problems" than individual adjudication, see <u>Williams</u>, 568 F.3d at 1358, a class action is not superior, and Rule 23(b)(3) certification should be denied.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. 112) must be denied.

s/ George W. Royer, Jr.
George W. Royer, Jr.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: gwr@LanierFord.com, djc@LanierFord.com; jbe@LanierFord.com

Attorneys for Defendant City of Decatur, Alabama

<u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Byron R Perkins
PERKINS LAW
The Civic Center Medical Forum Building
950 22nd Street North, Ste. 550
Birmingham, AL 35203
205-558-4696
Fax: 205-759-3669
bperkins@perkins-law.com

Terrinell Lyons
LYONS LAW FIRM, INC.
612 South Court Street
Florence, AL 35630
256-768-0340
Fax: 256-768-0346
terrinelllyons@aol.com

Lee David Winston
WINSTON COOKS
505 20th Street North Suite 815
Birmingham, AL 35203
205-502-0940
Fax: 205-278-5876
lwinston@winstoncooks.com

Roderick T Cooks
WINSTON COOKS LLC
Two 20th Street North, Suite 1330
Birmingham, AL 35203
205-502-0970
Fax: 205-278-5876
rcooks@winstoncooks.com

Robert L. Wiggins, Jr.
WIGGINS, CHILDS, QUINN & PANTAZIS LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
rwiggins@wcqp.com

Stephen E Whitehead
Devon Kehres Rankin
LLOYD GRAY WHITEHEAD & MONROE PC
2501 20th Place South, Suite 300
Birmingham, AL 35223
205-967-8822
Fax: 205-402-4085
steve@lgwmlaw.com
drankin@lgwmlaw.com

Bryan A Grayson
LLOYD, GRAY, WHITEHEAD
& MONROE, PC
880 Montclair Road, Ste. 100
Birmingham, AL 35213
205-967-8822
Fax: 205-967-2380
bgrayson@lgwmlaw.com

on this the 14th day of February, 2020.

s/ David J. Canupp
David J. Canupp