FILED
2020 Mar-06  PM 08:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | |
|---|---|
| SAMANTHA MALONE, HOLLY KIMMONS, MARK BLEDSOE, ANDY FENNELL, and TRAVIS MOSELY, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 5:16-CV-00483-LCB ) |
| CITY OF DECATUR, ALABAMA, EMILY BAGGETT, CHRISTY MILLER, and PROFESSIONAL PROBATION SERVICES, | ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' REPLY TO THE CITY OF DECATUR AND PROFESSIONAL PROBATION SERVICES, INC. OPPOSITION TO CLASS CERTIFICATION

I. **Introduction**

Plaintiffs reply to both the City of Decatur and Professional Probation Services, Inc. opposition to class certification.

A class exists of persons who contend that Professional Probation Services, Inc. wrongfully used threats of imprisonment to collect their corporate fees and city fees from citizens who could not pay court fines. The City of Decatur's delegation of power to company agents who allegedly threatened probationers with

1

imprisonment for failing to pay violated the citizens' constitutional rights and/or resulted in an abuse process.

PPS's authorization and empowerment by the City of Decatur was objective and standardized by the written contract to collect corporate fees: Basic Probation Supervision and the City of Decatur ($35.00) per month to be paid by the probationer. PPS Specifications. Doc. 113-2, pg. 2.   No individualized assessment is necessary, everyone that came through the municipal court system who could not afford their fines was left subject to the whims of PPS personnel if they could not pay their fines and/or fees.

The proposed class representatives' testimony and PPS' written cases notes confirm that PPS was focused on extracting money, including their fees, and used threats of warrants for imprisonment for failure to pay.

There is no over inclusiveness by including all persons subject to PPS in the class definition. PPS factually disputes whether any abuse of process occurred in the collection of fines and in particular their monthly monitoring fees which was authorized by city's contract.  Whether the conduct was tantamount to an abuse of process occurred and/or resulted in a violation of constitutional rights is a question for trial and not preclusive of class certification.

## II. LEGAL ARGUMENT

### A.     CLASS CLAIMS ARE ALL TIMELY

Without consideration of any tolling issues, the 2 year statute of limitations

applicable to abuse of process and/or §1983 claims is timely for acts occurring

after March 24, 2014 two years prior to the complaint being filed on March 24,

2016.  City of Decatur's Opposition to Class Certification Doc. 127, pg. 11,

Professional Probation Services' Memorandum In Support of Summary Judgment,

Doc. 115, pg. 36.

Defendant PPS did not move for summary judgment based on the statute of

limitations for Holly Kimmons and Andy Fennell. Id. pg. 33-35.

For Samantha Malone, she was subject to the threats of pay or have warrants

issued within the limitations period. According to PPS records, Malone, on 03-31-

2014 paid a fine $50 and her monthly monitoring fee of $35.00 representing 70%

of the Court fine.  Doc. 131-1 PPS Doc. 000033. Malone was paying PPS fees as

of 10-31-2014, well within the applicable statute of limitations.

PPS records also reflects that as of November 11, 2014, within the

applicable statute of limitations period, Malone completed a term of service that

left her subject to PPS threats to collect fees of $420.00, almost twice the

3

underlying court fine of $260.00. Doc. 131-2, PPS 00037. Throughout 2014,

Malone was subject to PPS threats and monthly fines. Doc. 131-1 PPS Doc.

00033.   As reflected on May 27, 2014, Malone paid PPS fee of $20.00 and no

money on the fine. Id.   PPS put their own interest in collecting monthly

monitoring fees ahead of the City of Decatur.  On July 31, 2014, August 15, 2014,

and again September 30, 2014 reflect PPS fees being collected and no fines.  Doc.

131-2 PPS ID Doc. 00034. These collection efforts are within the statute of

limitations period.

> Malone testified:
>
> Q: Tell me as best you can recall the
> exact language that was used by the PPS probation officer
> that you contend was threatening.
>
> A: If you do not pay this fine off -- If you do not pay this fine off, you
> will have a warrant for your arrest and you will go to jail. Malone
> Dep. Pg. 75:9-15 (Doc. 110-2, pg. 21)

PPS, the City of DeCatur's authorized agent, pursuant to a written

specifications, the plaintiffs allege using threats of imprisonment to collect the city

fine money and their monthly monitoring fees.

Holly Kimmons was also subject to PPS collection procedures during 2015,

well within the applicable statute of limitations.  Doc. 131-3, pg. 5-10, PPS ID 62-

67

PPS records show Mark Bledsoe supervision ended in 2015.  Doc. 131-3,

pg. 11

Moreover to the extent any claim would be time barred, that does not

preclude class certification over debt collection efforts.

Plaintiff argues that he has established typicality because Plaintiff and the
members of the classes suffered from a common practice Defendant employed,
namely its issuance of form debt collection letters. Motion at 12. The Court agrees
with Plaintiff that the sending of form debt collection letters demonstrates
typicality. Moreover, other federal courts have certified classes where
the class members received collections letters seeking time-barred debt.
In *Annunziato v. Collecto, Inc.,* 293 F.R.D. 329 (E.D.N.Y.2013), for example, the
court held that a need for individualized determinations with respect to whether the
debt was time-barred did not prevent a finding that typicality had been
satisfied. *Id.* at 337. Thus, an individual determination of statute of limitations
for class members does not preclude certification.

Sharf v. Fin. Asset Resolution, LLC, 295 F.R.D. 664, 670 (S.D. Fla. 2014)

## B.  **Plaintiffs' Satisfy Numerosity**

At the beginning of this litigation, Plaintiffs' Initial Disclosures alerted the

defendant to 140 persons with similar experiences.

"The Known Class Members are similarly situated as the Named Plaintiffs.
All the Known Class Members were placed on Probation with PPS and were
harassed by the Defendants and threatened by the Defendants with
incarceration if they did not pay fines and fees of probation by certain
deadlines or pay certain amounts." Doc. 113-7 pg. 1

In footnote 6, PPS disputes, without any evidentiary support, that a number of the listed individuals were not supervised by PPS.  To the extent that any persons were not subject to PPS that is a factual dispute.  Disqualifying some of the 140 persons still leaves enough persons to support class treatment.

As PPS notes in their brief 40 people is adequate to support a class. PPS nor the City of DeCatur disputes that there are at least forty persons who were subject to PPS' collection practices.  "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Weekes-Walker,* 281 F.R.D. at 524 (quoting *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 605 (S.D.Fla.2002)); *See also Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986); *See also* Newberg, *NEWBERG ON CLASS ACTIONS* § 3:5 at 247 (4th ed. 2002) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

### C.      Class Commonality as to Claims

 Both the City and PPS raise alleged problems with commonality and cite Wal-Mart v. Dukes 564 U.S. 338, 350 (2011). This case is not Wal-Mart where local managers in 3,400 stores made decisions affecting 1.5 million individuals.

The Rule 23(a)(2) commonality requirement is met because the City and PPS had an established a written practice of assessing probationers that could not pay municipal fines to an additional monthly monitoring fee of $35.00 per month imposed by PPS.  The dispute concerns the tactics used to collect the funds.  The reason one was subject to PPS monitoring was inability to pay not behavioral issues.

PPS was authorized to collect the fees, as PPS states in their opposition:

"…Were the class members compelled to pay fees under threat of imprisonment".  The putative class representatives testified to various threats but the answer is yes.  Plaintiffs' Memorandums' Opposition to Summary Judgment Doc. 128, pg. 1-14, pg 1-14.

Process is maliciously abused when it is used oppressively, *e.g.,* as "a whip to force the payment of an alleged indebtedness," *Mullins,* 189 Va. at 635, 54 S.E.2d at 122 (citation omitted), or as a means of extortion, *see Glidewell,* 124 Va. at 575, 98 S.E. at 669. The gravamen of the tort lies in the abuse or the perversion of the process after it has been issued. Consequently, "it is not necessary to allege or prove that the process was maliciously [issued]." *Id.* at 571, 98 S.E. at 668.

Donohoe Const. Co. v. Mount Vernon Assocs., 235 Va. 531, 540, 369 S.E.2d 857, 862 (1988)

Whether the putative class members were treated similarly turns on collection practices common to all class members.

Moreover, all of the challenged decisions here were made by a small circle of probation offices working in concert with the same understanding as to how collect

the monthly fees. The adoption of these practices and its application to all PPS

collection activities is the "glue" that holds the class together. *Wal-Mart,* 131 S.Ct.

At 2552.

### D.        For a 23 b(3) Class Plaintiffs Establish Predominance.

The plaintiffs challenge the use of threats of imprisonment under the umbrella

of the written contract between the city and the private contractor to collect money

as a uniform practice. The manner of threats, frequency, legitimacy and the use of

threats of imprisonment is for trial not to be used to defeat class certification.

In terms of certification:

"Federal Rule of Civil Procedure 23(b)(3) requires that, before a class is certified
under that subsection, a district court must find that "questions of law or fact
common to class members predominate over any questions affecting only
individual members." The "predominance inquiry tests whether
proposed classes are sufficiently cohesive to warrant adjudication by
representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct.
2231, 138 L.Ed.2d 689 (1997). This calls upon courts to give careful scrutiny to
the relation between common and individual questions in a case. An individual
question is one where "members of a proposed class will need to present evidence
that varies from member to member," while a common question is one where "the
same evidence will suffice for each member to make a prima facie showing [or]
the issue is susceptible to generalized, class-wide proof." 2 W. Rubenstein,
Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation
marks omitted). The predominance inquiry "asks whether the common,
aggregation-enabling, issues in the case are more prevalent or important than the
non-common, aggregation-defeating, individual issues." *Id.,* § 4:49, at 195–196.
When "one or more of the central issues in the action are common to the class and
can be said to predominate, the action may be considered proper under Rule
23(b)(3) even though other important matters will have to be tried separately, such
as damages or some affirmative defenses peculiar to some

individual class members." 7AA C. Wright, A. Miller, & M. Kane, Federal
Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted).
<u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016)


Overarching questions of whether the tactics used to collect the fines and

monitoring fees and whether the alleged conduct amounted to an abuse of process

and/or can sustain a claim for a constitutional violation is ripe to be decided on a

class wide basis. See <u>Sharf v. Fin. Asset Resolution, LLC</u>, 295 F.R.D. 664, 671

(S.D. Fla. 2014)(Because the main issue in dispute in this case is whether form

letters sent to Plaintiff and all other class members violate the FDCPA and

FCCPA, common issues predominate. *See Singleton v. Gen. Revenue Corp.,* No.

12–20025–CIV, 2013 WL 151181, at *2 (S.D.Fla. Jan. 14, 2013).

## III. CONCLUSION

The proposed representatives articulate common class claims based on

firsthand experience and the matter should be certified as a class action for further

proceedings.

Respectfully submitted,


/s/ Lee Winston
Lee Winston (ASB-6407-072L)
Roderick T. Cooks (ASB-5819-O78R)
WINSTON COOKS, LLC
505 North 20th Street

Suite 815 Financial Center
Birmingham, AL  35203
rcooks@winstoncooks.com
lwinston@winstoncooks.com

Byron R. Perkins (ASB-0183-N75B)
PERKINS LAW, LLC
The Civic Center Medical Forum Bldg.
950 22nd Street North, Suite 82
Birmingham, Alabama 35203
bperkins@perkins-law.com

Terrinell Lyons (ASB-0346N46T)
The Law Offices of
Terrinell Lyons
612 S. Court Street
Florence, AL 35630
lyonslawnflonbham@gmail.com

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 6, 2020 the foregoing was filed via the Court's Electronic
Filing System which will notify all persons registered to receive the filing.

s/Lee Winston